# United States Court of Appeals
# for the Fifth Circuit

_____

### No. 22-30539

IN THE MATTER OF ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS

Debtor

JAMES ADAMS; JACKIE BERTHELOT;
THEODORE JACKSON; ERIC JOHNSON,

Appellants

v.

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,

Appellee.

_____

On Appeal from the U.S. District Court for the Eastern District of Louisiana
CIVIL ACTION NO. 22-1738, SECTION "T"(3)
_____

### APPELLANTS' REPLY BRIEF
_____

SOREN E. GISLESON (#26302)
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
sgisleson@hhklawfirm.com

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA 70119
Tel: (504) 304-4582
Fax: (504) 304-4587
jdenenea@midcitylaw.com

RICHARD C. TRAHANT (# 22653)
2908 Hessmer Avenue
Metairie, LA 70002
Tel: (504) 780-9891
Fax: (504) 780-9891
trahant@trahantlawoffice.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... 3

ARGUMENT .......................................................................................................... 5

    I.   The Archdiocese's arguments about standing and jurisdiction are mere restatements from its *Motion to Dismiss*. ............................................................5

    II.  The Archdiocese's argument that Appellants were not sanctioned ignores the legal and factual bases for their removal from the Committee as well as the Bankruptcy Court's own language. ........................................................................6

    III.   The Archdiocese's novel "constitutional mootness" argument ignores the "meaningful relief" Appellants would gain from reversing the Sanctions Order, ignores the plain language of Section 1102(a)(4), and would forever make removal of committee members unreviewable by any court. ...............................12

CONCLUSION ..................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................. 18

CERTIFICATE OF COMPLIANCE ................................................................... 19

# **TABLE OF AUTHORITIES**

Page(s)

Cases

Appellants.  In *Brewer v. Texans Credit Union*,
  No. 4:17-CV-668, 2018 WL 4494105 (E.D. Tex. 2018) ...................................14
*Building & Constr. Dep't v. Rockwell Int'l Corp.*,
  7 F.3d 1487 (10th Cir. 1993) .................................................................... 13, 14
*County of Los Angeles v. Davis*,
  440 U.S. 625 (1979) ..........................................................................................14
*In re Cleveland*,
  26 F.4th 285 (5th Cir. 2022) ...............................................................................6
*In re DSC, Ltd.*,
  486 F.3d 940 (6th Cir. 2007) ............................................................................15
*In re Jiminez*,
  613 B.R. 537 (B.A.P. 9th Cir. 2020) .................................................................14
*In re Neptune Soc. Corp.*,
  936 F.2d 578 (9th Cir. 1991) ............................................................................11
*In re Paige*,
  584 F.3d 1327 (10th Cir. 2009) ........................................................................14
*In re Resource Technology Corp.*,
  430 F.3d 884 (7th Cir. 2005) ............................................................................15
*In re Roman Cath. Church of Archdiocese of New Orleans*,
  No. 20-10846, 2021 WL 454220 (Bankr. E.D. La. 2021) ..................................8
*In re the Roman Catholic Church of the Archdiocese of New,
  Orleans*, No. 22- ................................................................................................6
*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990) ..........................................................................................13
*Ortez v. Chandler,*
  845 F.2d 573 (5th Cir. 1988) ............................................................................12
*Powell v. McCormack*,
  395 U.S. 486 (1969) ..........................................................................................13
*Quezada v. INS,*
  898 F.2d 474 (5th Cir. 1990) ............................................................................12
*Sw. Bell Tel. Co. v. Long Shot Drilling, Inc. (In re Long Shot Drilling, Inc.)*,
  224 B.R. 473 (10th Cir. BAP 1998) ..................................................................14

*Umanzor v. Lambert*,
  782 F.2d 1299 (5th Cir. 1986) ................................................................ 12

Statutes

28 U.S.C. § 1102(a)(4) ............................................................................... 7
Section 1102(a)(4), and (b) ...................................................................... 10
Bankruptcy Code §105(a) ................................................................. 6, 7, 8
Bankruptcy Code § 1102(a)(2) .................................................................. 8
Bankruptcy Code § 1102 (a)(4) ................................................................. 8

Rules

FED. R. APP. P. 32(A)(6) ......................................................................... 19
FED. R. APP. P. 32(f) ............................................................................... 19

# ARGUMENT

In its Brief, the Roman Catholic Church of the Archdiocese of New Orleans ("Archdiocese") restates the same arguments from its Motion to Dismiss, misstates the legal and factual predicate for removing Appellants from the Unsecured Creditor's Committee, and births a new argument about constitutional mootness that would forever alter a reviewing court's ability to oversee a bankruptcy court's ruling to remove members of any committee. Ultimately, a review of the applicable statutes, cases, and the Bankruptcy Court's own language undermines the Archdiocese's arguments.

## I. The Archdiocese's arguments about standing and jurisdiction are mere restatements from its *Motion to Dismiss*.

The Archdiocese raises the same arguments about standing and jurisdiction that it raised in its *Motion to Dismiss*. DOC. 00516484793. Like in its Motion, the Archdiocese argues that Appellants lack standing because they cannot show how this appeal could have a "direct, financial impact" on their claims, *Appellee's Brief*, at 12-14, and that jurisdiction is lacking because the order being appealed from is interlocutory, *Appellee's Brief*, at 16-18. Appellants make the same arguments and rely on the same law as in its Motion to Dismiss.

Rather than engage in the same copy-and-paste as the Archdiocese, Appellants adopt, and incorporate by reference, the law, facts, and arguments raised in their *Opposition to Motion to Dismiss*. DOC. 00516497676. Appellants have

standing, and this Court has jurisdiction, for the reasons stated therein. *See In re the Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1740, *Order*, at 2-3 (08/23/22) (Guidry, J.) (citing *In re Cleveland*, 26 F.4th 285, 295 n.18 (5th Cir. 2022) (denying Archdiocese Motion to Dismiss for lack of jurisdiction because "bankruptcy sanctions are governed by traditional Article III considerations" and removal from the committee "appears to satisfy the finality and contempt elements required for this appeal to proceed forward").

**II.     The Archdiocese's argument that Appellants were not sanctioned ignores the legal and factual bases for their removal from the Committee as well as the Bankruptcy Court's own language.**

In its Brief, the Archdiocese argues in two different sections that Appellants were not sanctioned. The Archdiocese first argues that Appellants' removal from the Committee was not a sanction but rather the Bankruptcy Court's effort to "preserve Appellants' right to counsel of their choice". *Appellee's Brief*, at 15. Next, the Archdiocese argues that the Appellants were not sanctioned but instead "relieved of their positions" after the "Bankruptcy Court appropriately exercised its discretion under § 105(a) of the Bankruptcy Code". *Id.* at 24.

The Archdiocese's arguments ignore the legal and factual bases for Appellants' removal from the Committee – as well as the Bankruptcy Court's stated reasons. First, the Archdiocese's argument does not seek to legally justify the Bankruptcy Court's decision to remove Appellants pursuant to 28 U.S.C. §

6

1102(a)(4). In fact, the Archdiocese only cites to Section 1102(a)(4) once in its Brief in its argument concerning constitutional mootness. The Archdiocese's abandonment of Section 1102(a)(4) and attempt to prop-up the Bankruptcy Court's ruling pursuant to its general powers under 11 U.S.C. § 105(a) is a telling concession.

The reason that the Archdiocese has abandoned Section 1102(a)(4) as the legal justification for removing Appellants from the committee is that it requires (a) notice, (b) a hearing, and (c) a request made <u>by a party</u>. 11 U.S.C. § 1102(a)(4). The Archdiocese concedes that Appellants received none of those. No notice was ever issued that Appellants' removal was a possibility. The Bankruptcy Court failed to conduct a hearing, despite its order at the time it appointed the Trustee to conduct an investigation that it would conduct one. *See April 25, 2022 Order*, at 3, BKR. Rec. Doc. 1468 ("Upon reviewing the United States Trustee's Statement of Position, <u>the Court will schedule a further hearing to determine what action, if any, should be taken</u>.") (emphasis supplied).

No party ever requested that any of the Appellants be removed from the Committee. No party filed a written motion or made a statement in Court seeking that relief. In fact, the proper party to make such an argument would be the Office of the United States Trustee, which although it essentially prosecuted this matter in the Bankruptcy Court, has filed nothing either in this Court or in the District Court.

In fact, the Archdiocese's own argument runs opposite to the Bankruptcy

Court's earlier holding in this same case in which it explicitly ruled that its general powers pursuant to Section 105(a) do <u>not</u> allow it to remove members from a committee: "Therefore, at this time the <u>only powers over committees given to bankruptcy courts by the Code are found in §§ 1102(a)(2) and (a)(4)</u>." *In re Roman Cath. Church of Archdiocese of New Orleans*, No. 20-10846, 2021 WL 454220, at *9 (Bankr. E.D. La. 2021) (Grabill, B.J.) (emphasis supplied). Only Section 1102(a)(4) provides the authority to remove members from a Committee. *Id.* at *8-*9.

Because it could not use its general authority pursuant to Section 105(a) to remove Appellants from the Committee, and it violated the only statute that specifically authorized removal (Section 1102(a)(4)), the Bankruptcy Court was legally powerless to remove Appellants from the Committee, unless it used its inherent authority <u>to sanction a party</u>. By its own earlier ruling, the Bankruptcy Court understood that its general powers did not authorize such an action. Only Section 1102(a)(4) authorized the Bankruptcy Court to remove Appellants, and the Bankruptcy Court violated all three requirements of Section 1102(a)(4) by failing to provide notice, failing to conduct a hearing, and not having any party request any committee members' removal.[1]

---

[1] In one of its last footnotes, the Archdiocese half-heartedly attempts to argue that Appellants had notice they were "potential targets" of the Trustee's investigation. *Appellee's Brief*, at 23 n.13. The Archdiocese, however, failed to contest any of Appellants' factual recitation of the procedural

Second, the Archdiocese's argument that Appellants' removal from the Committee was not a sanction also fails based on the factual predicate of the Bankruptcy Court's ruling. At its core, the Bankruptcy Court's June 7, 2022 Order is a sanctions order. The Bankruptcy Court's stated reason to remove Appellants from the Committee was to punish their lawyer for an alleged protective order violation. *Sanctions Order*, at 3, ROA.19. The Sanctions Order was focused solely on their lawyer and contained not the slightest mention that Appellants did anything wrong whether overtly or otherwise. Such a glaring lack of focus on Appellants demonstrates that all consequences flowed from the alleged breach of a protective order. The consequence of removing Appellants from the Committee resulted from the alleged protective order violation.

Third, the Bankruptcy Court's own language leaves no question that it "imputed" the alleged protective order violation to Appellants. The Bankruptcy Court's decision to "impute Trahant's actions to those of his clients on the Committee and finds cause for their removal from the Committee" demonstrates that, although Appellants themselves did nothing wrong, the Bankruptcy Court

---

history in their Original Brief. The Archdiocese never argues that there was any hearing or any request by any party to remove any Committee members. To Appellants knowledge, the Trustee has never articulated in any unsealed filing whether its position is that Appellants should have been removed from the Committee (or for that matter whether attorney Trahant should have been sanctioned). Of course, having never read the Trustee Report or supporting statements, Appellants are not aware of what may have been represented in any document filed under seal.

9

meant to punish their lawyer by removing them from the Committee. *Sanctions Order*, at 5 (emphasis supplied), ROA.21.

"To impute" from one person to another has a specific legal meaning. The use of the term "impute" within the context of sanctions means to assign knowledge and responsibility from the person accused of misconduct to someone else:

> As used in legal phrases, this word means attributed vicariously; that is, an act, fact, or quality is said to be 'imputed' to a person when it is ascribed or charged to him, not because he is personally cognizant of it or responsible for it, but because another person is, over whom he has control or for whose acts or knowledge he is responsible.

BLACK'S LAW DICTIONARY, at 758 (6th ed. 1990).

By finding that their attorney's alleged misconduct must be "imputed" to Appellants, the Bankruptcy Court effectively found Appellants "responsible" for that same conduct to suffer their own adverse action.[2] In other words, the Bankruptcy Court found by "imputation" that Appellants were responsible for the alleged protective order violation as their lawyer and sanctioned them specifically by removing them from the Committee without notice or a hearing. *See generally In re Neptune Soc. Corp.*, 936 F.2d 578 (9th Cir. 1991) ("The order of the district

---

[2] In its Brief, the Archdiocese makes a fleeting statement that removal from the Committee could not be a "sanction" because the Appellants do not have a "right" to serve on the Committee. *Appellee's Brief*, at 16. This argument is easily disposed of because (a) Appellants were obviously serving at the time of their removal, meaning they had an interest to remain on that Committee and could only be removed pursuant to Section 1102(a)(4), and (b) whether a court action operates as a "sanction" depends on the action taken by a court and whether that action is intended to punish and deter future misconduct not whether the subject of the sanction enjoys a particular right.

court is VACATED with directions to consider sanctions that will punish the proper person for failure to comply with Rule 8010, and whether, under these circumstances it is appropriate to impute his attorney's errors to the client.").

In its Brief, the Archdiocese fails to assign any meaning to the Bankruptcy Court "imputing" its findings of an alleged protective order violation against an attorney to Appellants. This omission exposes an indefensible position. The Archdiocese cannot argue that the Bankruptcy Court followed Section 1102(a)(4)'s requirements for notice, a hearing, and the request being made on behalf of a party; the Archdiocese cannot argue that a bankruptcy court's general powers pursuant to Section 105(a) authorize removal of a committee member; and so the Archdiocese is left with the only authority left to the Bankruptcy Court to take such an extreme action – its power to sanction.

With its finding of "imputing" responsibility to Appellants, the Bankruptcy Court combined the finding of wrong-doing with the penalty for that wrong-doing. In one fell-swoop, the Bankruptcy Court found them responsible and punished them through removal. The Bankruptcy Court's punishment cost Appellants more than two years of service on the Committee, incalculable hours of work, and the emotional toll of revisiting their abuse and the Archdiocese's role as enabler of that abuse for more than 100 consecutive weeks. The Bankruptcy Court exacted that penalty without any party requesting it, without notice, and without a hearing.

**III.    The Archdiocese's novel "constitutional mootness" argument ignores the "meaningful relief" Appellants would gain from reversing the Sanctions Order, ignores the plain language of Section 1102(a)(4), and would forever make removal of committee members unreviewable by any court.**

In its Brief, the Archdiocese argues that this Court could not order "meaningful relief" in this appeal, since the Trustee enjoys sole discretion on who to appoint to a committee. *Appellee Brief*, at 18-20. The Archdiocese posits that "even if this Court were to reverse the June 7, 2022 Order, there is no provision in the Bankruptcy Code that permits a court to order a United States Trustee to appoint specific members to a committee." *Id.* at 19. As such, its argument goes, the appeal is constitutionally moot, since any order by this Court would not provide relief.[3]

However, the reversal of the June 7, 2022 Sanctions Order would provide "meaningful relief" to Appellants for a host of reasons. Because they were "imputed" with responsibility for an alleged protective order violation and subsequently sanctioned, without notice and an opportunity to be heard, Appellants have a very real interest to publicly clear their reputation; Appellants may remain under threat of more sanctions into the future for more allegations of misconduct for things they never did; Appellants have a real interest in conducting a full evidentiary

---

[3] The Archdiocese's "constitutional mootness" argument should <u>not</u> be confused with the type of "equitable mootness" arguments that typically are raised within the bankruptcy context of plan confirmations that require moving for a stay. *See Quezada v. INS,* 898 F.2d 474, 475–77 (5th Cir. 1990); *Umanzor v. Lambert,* 782 F.2d 1299, 1302–03 (5th Cir. 1986); *Ortez v. Chandler,* 845 F.2d 573, 574–75 (5th Cir. 1988).

12

hearing on the issue of sanctions and any alleged protective order violations; Appellants have a substantial interest to ensure that their lawyer who was also sanctioned is provided with notice and an evidentiary hearing; Appellants have an interest in knowing that, going into the future, the Bankruptcy Court will not sanction them again without notice and a hearing; and Appellants have an interest in learning, for the first time, what the Trustee Report found, what statements, if any, were made against them, what were the bases of the sanctions against them, and, in a general sense, what exactly happened.

The Constitutional mootness doctrine is grounded in the Article III requirement that federal courts only decide "actual, ongoing cases or controversies." *Building & Constr. Dep't v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1491 (10th Cir. 1993) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). "However, the conditions under which a suit will be found constitutionally moot are stringent.  Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 1491 (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  "[A] case properly brought in the first instance only becomes moot where interim relief or events have completely eradicated the effects of the alleged violation." *Id.* (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

The Archdiocese cites to only two cases in support of its novel argument -- one of which is inapposite and the other supports Appellants. In *Brewer v. Texans Credit Union*, No. 4:17-CV-668, 2018 WL 4494105, at *2 (E.D. Tex. 2018), the district court sitting as an appellate court over the bankruptcy court held that the appeal was in fact constitutionally moot because the "Bankruptcy Court dismissed Debtor's bankruptcy proceeding". In this case, the bankruptcy has not been dismissed and is not close to any kind of resolution.

The Archdiocese's only other cited case is *In re Paige*, 584 F.3d 1327, 1336 (10th Cir. 2009), which favors Appellants. In that case, the court denied the constitutional mootness argument by holding that the appellees <u>failed their burden</u> to show that no relief could be granted, since the issues on appeal were tied to plan confirmation. The court also noted that the appellants need only show "some possibility" of relief. *Id.* (citing *Sw. Bell Tel. Co. v. Long Shot Drilling, Inc. (In re Long Shot Drilling, Inc.)*, 224 B.R. 473, 478 (10th Cir. BAP 1998)).

In fact, "constitutional mootness" arguments typically arise in the context of plan confirmation and/or the dismissal of the bankruptcy in its entirety – not for a specialized issue such as this one. *See, e.g., In re Jiminez*, 613 B.R. 537, 544 (B.A.P. 9th Cir. 2020) (holding that an appeal from relief of a Stay Order was not moot despite the subsequent Dismissal Order); *In re DSC, Ltd.*, 486 F.3d 940, 945–46 (6th Cir. 2007) (holding that the bankruptcy court's denial of a petitioner's joinder request was

not mooted by the dismissal of the involuntary bankruptcy petition or the post-dismissal settlement); *In re Resource Technology Corp.*, 430 F.3d 884, 886 (7th Cir. 2005) (holding that the bankruptcy appeal was not moot, despite a settlement after the denial of all requests for a stay, because the court could order the return of money, reinstate the claims, and order other relief).

The Archdiocese's novel argument also ignores the plain language of Section 1102(a)(4). Section 1102(a)(4) empowers a bankruptcy court to "<u>change the membership of a committee</u> appointed under this subsection". 11 U.S.C. § 1102(a)(4) (emphasis supplied). Section 1102(a)(4) is <u>not</u> limited to just instructing the Trustee to remove members. To "change the membership" of the committee includes instructing the Trustee to add those it previously appointed and later removed. In this case, Section 1102(a)(4) is simply returning to the *status quo* by returning members to the Committee who the Trustee previously appointed and who served for more than two years on the same Committee.

Common sense also dictates that if a bankruptcy court can order the Trustee to remove specific committee members, then it can order the Trustee to return those same members to the same committee. No language in Section 1102(a)(4) supports an interpretation that it operates as a one-way street in which a district court or appellate court is incapable of undoing an earlier mistake committed by a bankruptcy court.

At the center of the Archdiocese's argument is the <u>assumption</u> that the Trustee will not reinstate Appellants once the Sanctions Order is reversed. The Archdiocese does not provide any support for its assumption. The Trustee has shown, however, that it follows the orders issued by the Bankruptcy Court to remove specific members from the Committee. The Archdiocese has <u>failed its burden</u> to submit proof or logic for why the Trustee would act differently upon being ordered by this Court to return to the *status quo* and reinstate Appellants to the Committee.[4] Even the Trustee has not supported this argument.

Lastly, if the Archdiocese's "constitutional mootness" argument is followed to its logical conclusion, no reviewing court could ever correct a bankruptcy court's mistake when reconstituting a committee.[5] As long as the Trustee acts pursuant to the order to reconstitute a committee, no reviewing court would be able to correct any mistake. Like in this case, a bankruptcy court could ignore the notice and hearing requirements of Section 1102(a)(4) without fear of reversal as long as the

---

[4] Admittedly, the Trustee's silence in this appeal is baffling. The Trustee has failed to defend the sanctions. The Trustee has failed to criticize the sanctions. The Trustee has failed to stake a position as to whether Appellants should return to the Committee. The Trustee has failed to file any brief into the record (that was not under seal) with any court about these issues. Importantly to the argument of constitutional mootness, the Trustee has failed to inform anyone whether it would re-appoint Appellants if given the opportunity to do so. For now, the only action that the Trustee can be said to have taken is that it removed Appellants from the Committee upon an order from the Bankruptcy Court. The Archdiocese fails its burden to prove that the Trustee would do anything other than re-appoint Appellants to the Committee upon an order from this Court.

[5] This would effectively create the situation where a non-Article III judge could issue important rulings in a case which are unreviewable by any Article III judge – as long as the Trustee acts on the order to remove committee members before any reviewing court can address the decision.

Trustee timely follows its order to reconstitute committees. The Archdiocese has failed its burden to cite to any case or statute that would support such unreviewable authority by a bankruptcy court.

## **CONCLUSION**

For all of the aforementioned argument, law, and facts, Appellants respectfully request that this Court reverse and vacate the Bankruptcy Court's June 7, 2022 Order and instruct the Trustee to reinstate Appellants to the Official Unsecured Creditor's Committee.

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON (#26302)
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

          JOHN H. DENENEA, JR. (#18861)
          SHEARMAN~DENENEA, L.L.C.
          4240 Canal Street
          New Orleans, LA  70119
          Telephone: (504) 304-4582
          FAX: (504) 304-4587
          jdenenea@midcitylaw.com

*Attorneys for Appellants*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on January 18, 2023 on all registered counsel of record, and has been transmitted to the Clerk of the Court.

          S/Soren E. Gisleson

          Counsel of Record for Appellants:
          *James Adams; Jackie Berthelot*
          *Theodore Jackson; and Eric Johnson*

Dated: January 18, 2023.

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because:

this reply brief contains 3,255 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

this brief also complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type requirements of FED. R. APP. P. 32(A)(6) because:

this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 with a 14 point font named Times New Roman.

                                                        S/Soren E. Gisleson

                                                        Counsel of Record for Appellants:
                                                        *James Adams; Jackie Berthelot*
                                                        *Theodore Jackson; and Eric Johnson*

Dated: January 18, 2023