**United States Court of Appeals
for the Fifth Circuit**

_____

**No. 22-30539**

JAMES ADAMS, ET AL
v.
THE ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF NEW ORLEANS

_____

On Appeal from the U.S. District Court for the Eastern District of Louisiana
CIVIL ACTION NO. 22-1738, SECTION "T"(3)
_____

**APPELLANTS' MOTION TO STAY APPEAL
AND CANCEL ORAL ARGUMENT**

_____

SOREN E. GISLESON (#26302)
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA 70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email:
trahant@trahantlawoffice.com

NOW INTO COURT come Appellants James Adams, Jackie Berthelot, Eric Johnson, and Theodore Jackson who respectfully move the Court for an Order to Stay this Appeal without prejudice to allow time for the District Court to consider a Motion to Vacate the Judgment and Motion to Disqualify Judge Greg Guidry. Appellants also move to cancel the May 3, 2023 scheduled oral argument. Appellee the Archdiocese of New Orleans opposes the motion and the requested relief.

This appeal focuses on a June 7, 2022 Sanction Order from the Bankruptcy Court for the Eastern District of Louisiana issued in *In re Roman Catholic Church for the Archdiocese of New Orleans*, No. 20-10846 (E.D.La. Bkrptcy Ct.). The Sanctions Order instructed the United States Trustee to remove Appellants from the Unsecured Creditor's Committee. The Trustee followed the Bankruptcy Court's order.

On June 10, 2022, Appellants filed an *Expedited Notice of Appeal* to the District Court for the Eastern District of Louisiana. ROA12-15. The matter was allotted to Judge Greg Guidry. Appellants filed a *Motion for Expedited Briefing* which was granted. ROA418. Appellants also filed a *Motion to Supplement the Record* to add the sealed documents such as the Report and statements. ROA313-361. The District Court granted the motion. ROA418. Appellants also filed a *Motion to Access the Sealed Record* which was not ruled upon before the appeal was dismissed.

2

On July 19, 2022, the Archdiocese filed a Motion to Dismiss Appeal for lack of standing and lack of jurisdiction.  ROA835-53.  On August 11, 2022, Judge Guidry granted the motion and dismissed the appeal, finding that Appellants lacked standing because they did not articulate a pecuniary harm.  ROA973-77.  The District Court did not address the Archdiocese's jurisdictional argument.

On August 16, 2022, Appellants timely filed a Notice of Appeal to this Court. ROA979-80.  On September 8, 2022, Appellants filed a *Motion to Access and Unseal the Record* in order to finally review the Report and statements and unseal them.  DOC 00516464383.  On September 26, 2022, the Archdiocese filed an *Opposition*, conceding that Appellants could access the record but opposing unsealing the record.  DOC 00516484765.  On October 5, 2022, Appellants filed a *Reply*.  DOC 00516497392.

On September 26, 2022, the Archdiocese filed a *Motion to Dismiss Appeal* for lack of standing and lack of jurisdiction.  DOC 00516484793.  On October 5, 2022, Appellants filed an *Opposition*.  DOC 00516497676.  On October 12, 2022, the Archdiocese filed a Reply.  DOC 00516506014.  On October 18, 2022, this Court issued an Order that it would carry Appellants' *Motion to Access and Unseal the Record* and the Archdiocese's *Motion to Dismiss* with the case.  DOC 00516512914.

3

Oral argument is scheduled for May 3, 2023. Judges Jennifer Elrod, James Ho, and Corey Wilson comprise the panel assigned to hear the matter.

## I.     Judge Guidry Recused Himself in the Companion Case.

On April 28, 2023, Judge Guidry issued an order recusing himself in an appeal from the Archdiocese of New Orleans Bankruptcy which, for all practical purposes, concerns the same parties and addresses the same June 7, 2022 Sanction Order issued by the Bankruptcy Court that is the subject of this appeal. Judge Guidry's recusal order states:

> I do not believe disqualification pursuant to 28 U.S.C. §455 is mandated, and no party has filed a motion to disqualify me pursuant to 28 U.S.C. § 144; however, balancing my duty to decide the case with my duty to consider self-recusal if appropriate, I have decided to recuse myself from this matter in order to avoid any possible appearance of personal bias or prejudice.

*In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1740 c/w 22-4104, at 1 (04/28/23) [Bkrptcy No. 20-10846], attached as Exhibit 1.

Judge Guidry issued the recusal order *sua sponte*. No party had filed a motion to recuse. Judge Guidry never specifically identified on the record the factual basis for his recusal. Judge Guidry had previously conducted two status conferences in which he vaguely alluded to his concerns.

On April 13, 2023, Judge Guidry *sua sponte* called a telephone status conference in which he stated as follows:

> Now, it has been brought to my attention that past charitable donations to New Orleans Catholic charities and the Catholic Community Foundation as well as my time as a board member for New Orleans Catholic Charities approximately from 2000 to 2008 could possibly be a reason for me to consider recusing myself in this case.  As you're aware, no motions for recusal have been filed, so this question has not been considered before.  And, of course, neither Catholic charities or the Catholic community foundation are parties to this matter.

> Now, in light of this, I have requested guidance from the committee on codes of judicial conduct and I should receive a response from the committee within a week or two.  The committee's response to me will guide my decision concerning whether to recuse myself or not.  And naturally I will take no further action in this case until this question has been resolved.

> That's all I wanted to convey with you during this brief status conference and we will be in touch at the appropriate time in an appropriate manner.

*04/13/23 Status Conference Transcript (Rough Draft)*, at 2-3, attached as Exhibit 2.

On April 21, 2023, Judge Guidry called another *sua sponte* telephone status conference in which he stated as follows:

> Last week, as you know, on April 13th, I conducted a status conference to discuss a possible recusal issue.  I informed you that I had requested guidance from the Committee on Codes of Conduct and that committee's response would guide me in my decision.

> Now, I received a formal advisory opinion from the committee on April 20th.  I also received informal advisory opinions from

the counsel for the committee, Robert Deyling, and the chair of the committee, <u>Judge Jennifer Elrod</u>.

In its formal opinion, the committee provided the following summary, which I will read for you for your information: The committee sees multiple factors that weigh against the need for recusal under Canon 2 or the general impartiality rule of Canon 3C(1). First, none of the charities to which you contributed some of your wind-down campaign funds has been or is an actual party in any proceeding before you. Moreover, even though your contributions to charities affiliated with Catholic interests were generous and substantial, they amounted to less than 25 percent of the campaign funds you had to donate.

Second, your leadership as a board member of one of the charities ended 15 years ago, which is a significant span of time, and over a decade before the Archdiocese filed its Chapter 11. Third, you have already entered several decisions and those decisions do not uniformly favor any interested party, which is a concrete indication of impartiality. Finally, simply participating as a faithful participant in the life of your parish and the Archdiocese of which it is a part cannot amount to a reasonable basis for questioning impartiality in litigation involving the church without effectively forcing judges to choose between their faith and their adjudicative duties.

Based on the facts, the committee does not see in your case anything that would require a direct or explicit basis for disqualification under Canon 3C(1)(a) through (e). Recusal based on a risk of an appearance of impropriety under Canon 2 or a reasonable basis for questioning impartiality under Canon 3C(1) is inherently fact specific and often a very personal decision for the judge involved. With that said, the committee does not believe a reasonable person fully informed of all relevant considerations would have a basis to question your impartiality or to suggest a risk of an appearance of impropriety necessitating recusal in your case.

In light of the committee's advice -- and the committee falls under the Judicial Conference of the United States and is comprised of more than a dozen judges from around the country who volunteer their time and efforts for this purpose. <u>Based upon</u>

that advice and based upon my certainty that I can be fair and impartial, I have decided not to recuse myself.

That concludes all I wanted to tell you in the status conference.

*04/21/23 Status Conference Transcript*, at 4-6 (emphasis supplied), attached as Exhibit 3.[1]

One week later, Judge Guidry reversed course and recused himself without explanation or fully disclosing the factual basis for his recusal.[2] As a result, it is not clear the factual basis for his recusal or why he reversed his decision. It is also not clear what changed from the April 21, 2023 status conference when he decided he would not recuse himself, expressing that he was "certain" that he could be "fair and impartial", to his decision one week later to recuse himself to avoid the appearance of impropriety.

It is known, however, that a number of newspaper articles were being published around this time. At least three newspaper articles have been written about

---

[1] At this conference, Judge Guidry mentioned engaging in *ex parte* communications with Judge Jennifer Elrod who is assigned to the panel for oral argument in this case on May 3, 2023. Judge Guidry did not disclose the substance of the communication other than to say it was an "informal advisory opinion". It is unclear whether Judge Guidry and Judge Elrod discussed the merits of this appeal, the pending oral argument, or any other related matter. Clarification of the *ex parte* communications would assist Appellants in deciding whether in it should be addressed further.

[2] While Judge Guidry conducted two status conferences in advance of his conclusion to not recuse himself, there is simply no record or disclosure by Judge Guidry as to the basis of his conclusion to recuse himself. The Appellants are certainly at a significant disadvantage by the lack of transparency in the District Court's late-night recusal order. This is especially critical since the apparent reasons for his recusal were not some new event or change in circumstances, as the reported reasons were known to him from 2020 to the present.

Judge Guidry's relationship with the Archdiocese of New Orleans and its related entities – one before he recused himself and two after his recusal. *See Judge Stays on Catholic Bankruptcy Despite Church Donations*, AP News (04/21/23); *Judge in Catholic Bankruptcy Recuses Over Church Donations*, AP News (04/29/23); *Judge in Archdiocese Bankruptcy Case Recuses Himself Over Donations Scandal*, The Guardian (04/29/23), attached *in globo* as Exhibit 4.

These three articles provide more specifics. For example, the articles represent: (a) Judge Guidry donated nearly $50,000 to Archdiocese related entities; (b) approximately $36,000 of those donations were made after the Archdiocese filed for bankruptcy when Judge Guidry was assigned as the district judge overseeing it; (c) the donations were made from Judge Guidry's remaining campaign funds when he served on the Louisiana Supreme Court years ago; (d) Judge Guidry's lawyer presently serves as a lawyer for the Archdiocese during the bankruptcy; and (e) Judge Guidry served on the board of a Catholic fundraising organization from 2000-08 during the time the Archdiocese was navigating an earlier wave of sex abuse cases for the facility known as Madonna Manor/Hope Haven – the same facility in which two of the Appellants in this case were raped as children.

On April 30, 2023, Appellants filed in the District Court a *Motion to Vacate Judgment*, attached as Exhibit 5, and a *Motion to Disqualify*, attached as Exhibit 6 The *Motion to Vacate* seeks to vacate the Order and Judgment that form the basis of

this appeal.  The *Motion to Disqualify* seeks to disqualify Judge Guidry from hearing the *Motion to Vacate* as well as any proceedings related to the Archdiocese bankruptcy.  Both motions are noticed for hearing on May 24, 2023.

The significant injustice to Appellants, the lack of injustice to the Archdiocese, the increased risk of injustice in other related cases, and the inevitable erosion of the public's confidence in the judicial process overwhelmingly favor vacating the district court judgment.  These same factors also support issuing a stay of the appeal without prejudice to the parties.

This Court will grant a stay of an appeal pending before it to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  *Homoki v. Conversion Servs., Inc.*, 488 F. App'x 848, 850 (5th Cir. 2012) (quoting *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914, 917 (5th Cir. 1997) (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of the ILA,* 751 F.2d 721, 728–29 (5th Cir. 1985)).

Judge Guidry's recusal has already been issued in the companion case before the District Court.  The same legal and factual issues are implicated in both cases.[3]

---

[3] Judge Guidry dismissed this case before ruling on Appellants' *Motion to Consolidate* the two cases filed in the District Court, despite having partial consent of the parties, and the *Motion to Consolidate* being filed before the Archdiocese's *Motion to Dismiss*.  [Rec. Doc. 21]

Judge Guidry's recusal in the underlying case has already been ruled upon and there is every expectation that it will apply to this case. There is no need to engage in a recusal analysis, since they essentially concern the same parties and the same order.

Appellants will suffer significant prejudice if the appeal is not stayed. In addition to the additional expense and effort, Appellants may well return to this Court with new issues that will require revisiting again the legal issues raised herein. By issuing a stay, this Court will expend less effort and time.

If the appeal is not stayed, then there is a significant risk of inconsistent results. The case in which Judge Guidry already recused himself will need to revisit all previous orders, including the merits. Resolution of that case could result in a decision that overrules the June 7, 2022 Sanction Order.

Lastly, if the appeal is not stayed, and the Court proceeds to the merits, then public confidence in the fairness of the federal judicial system will suffer. As the extensive press coverage has indicated, there is intense public interest in the Archdiocese generally, the approximately 500 claims of sexual abuse filed into the bankruptcy, and the manner with which the Archdiocese is being treated by the judiciary, especially in terms of the closeness between the Archdiocese and the judges of the Eastern District of Louisiana. To allow this appeal to proceed when the Appellants were denied notice and a hearing before the bankruptcy court,

summarily dismissed in the district court, only to be shown the door in the Circuit Court would convey a message to the public that sexual abuse survivors are unable to find a fair forum in federal court.

## CONCLUSION

For all of the aforementioned argument, law, and facts, Appellants respectfully request that this Court stay this appeal without prejudice, cancel the May 3, 2023 oral argument, and allow their *Motion to Vacate* the underlying judgment in this case proceed through the District Court.

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON (#26302)
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA  70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for Appellants*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's

ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of

Appellate Procedure, on May 1, 2023 on all registered counsel of record, and has

been transmitted to the Clerk of the Court.

S/Soren E. Gisleson

Counsel of Record for Appellants:
*James Adams; Jackie Berthelot*
*Theodore Jackson; and Eric Johnson*

Dated: May 1, 2023.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE ROMAN CATHOLIC
CHURCH OF THE ARCHDIOCESE
OF NEW ORLEANS

CIVIL ACTION

NO: 22-1740 c/w 22-4101

(Bankruptcy No. 20-10846)

SECTION: T(2)

<u>ORDER</u>

    I do not believe disqualification pursuant to 28 U.S.C. §455 is mandated, and no party has

filed a motion to disqualify me pursuant to 28 U.S.C. § 144; however, balancing my duty to decide

the case with my duty to consider self-recusal if appropriate, I have decided to recuse myself from

this matter in order to avoid any possible appearance of personal bias or prejudice.

    New Orleans, Louisiana this 28th day of April, 2023.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

REALLOTTED TO
**SECT. B**
April 28, 2023

EXHIBIT
1

| | | |
|---|---|---|
| 02:53:02PM | 1 | Test test parties in attend on the line for Richard |
| 03:00:40PM | 2 | entrepeneur |
| 03:00:41PM | 3 | Jack Morris for Mr. Entrepeneur. |
| 03:00:46PM | 4 | THE CASE MANAGER:  Anyone else. |
| 03:00:48PM | 5 | [!ATTORNEY1]:  I don't believe so Mr. Sto co my |
| 03:00:51PM | 6 | co-counsel is on a flight KVRNTS no problem.  Yes, sir we |
| 03:00:56PM | 7 | just want to make sure that we cover all our basis. |
| 03:00:59PM | 8 | Anyone -- well one moment, please, Mr. Greg prepared |
| 03:01:06PM | 9 | something for me. |
| 03:01:07PM | 10 | Who do we have for the AVRNZ. |
| 03:01:11PM | 11 | [!ATTORNEY2]:  Good afternoon Sam OPZ is here on |
| 03:01:16PM | 12 | behalf of the AVRNZ. |
| 03:01:18PM | 13 | THE CASE MANAGER:  Thank you very much.  Anyone else |
| 03:01:21PM | 14 | other than Ms. AUFRNZ. |
| 03:01:24PM | 15 | [!ATTORNEY3]:  This is MASHGZ HOOIZ on behalf of the |
| 03:01:27PM | 16 | debtor. |
| 03:01:28PM | 17 | THE CASE MANAGER: No problem.  Mark NANS he said |
| 03:01:51PM | 18 | earlier. |
| 03:01:52PM | 19 | Who do we are on the line for the U.S. trustee. |
| 03:01:56PM | 20 | [!EZ SPEAKER 04]: Good afternoon this is Amanda |
| 03:01:58PM | 21 | George on behalf of the U.S. trustee for region five. |
| 03:02:03PM | 22 | THE CASE MANAGER:  Anyone else on the line for the |
| 03:02:04PM | 23 | trustee.  All right.  Counsel please be patient.  One moment. |
| 03:02:27PM | 24 | [!EZ SPEAKER 04]: Robert the third is on the line for |
| 03:02:31PM | 25 | the unsecured KRITDers.  Entrepeneur, unsecure creditors |

EXHIBIT
2

03:03:17PM  **1**   second, AVRNZ third and the trustee will be fourth.  Other

03:03:23PM  **2**   than those four that I just referenced does anyone else on

03:03:26PM  **3**   the line who has not made an appearance.

03:03:30PM  **4**        #05:  Yes this is Philip eyesen berg and I'm also

03:03:37PM  **5**   here for the official unsecured creditors committee.

03:04:25PM  **6**        Mr. KEEBler speaking for the committee.

03:06:41PM  **7**                  (In open court.)

03:07:12PM  **8**        THE COURT:  Good afternoon Your Honor are you able to

03:07:15PM  **9**   hear me.

03:07:16PM  **10**       Yes Judge.

03:07:18PM  **11**       THE COURT:  Thank you for appearing short notice for

03:07:21PM  **12**  this status conference.  DOOED please call up the case.

03:07:24PM  **13**       Yes, sir we are here for a telephonic status

03:07:29PM  **14**  conference 22-CV2240, 4101 in re rome Kathleen church of the

03:07:38PM  **15**  OOVRNZ of New Orleans.  Counsel please make your appearance

03:07:43PM  **16**  for the record.

03:07:47PM  **17**       [!ATTORNEY1]:  Hello this is Jack Morris on behalf of

03:07:51PM  **18**  Richard entrepeneur.

03:07:54PM  **19**       [!ATTORNEY2]:  Good afternoon Your Honor this is oh

03:07:56PM  **20**  RET KUGal with flack lord on the official committee of

03:08:01PM  **21**  unsecured creditors.

03:08:04PM  **22**       [!ATTORNEY3]:  Good afternoon Your Honor Mark and

03:08:07PM  **23**  open HIEM on behalf of the debtor.

03:08:10PM  **24**       [!EZ SPEAKER 04]: Good afternoon Your Honor a man Dan

03:08:12PM  **25**  George on behalf of the United States trustee for region

03:08:17PM  1    five.

03:08:19PM  2             THE COURT:  Does that complete it?  Is that everyone?

03:08:24PM  3             THE CASE MANAGER:  Yes, sir.

03:08:26PM  4             THE COURT:  Again, thank you for appearing on short

03:08:29PM  5    notice.  Now, it has been brought to my attention that past

03:08:36PM  6    charitable donations to New Orleans Catholic charities and

03:08:41PM  7    the Catholic Community Foundation as well as my time as a

03:08:43PM  8    board member for New Orleans Catholic Charities approximately

03:08:47PM  9    from 2000 to 2008 could possibly be a reason for me to

03:08:57PM 10    consider recusing myself in this case.  As you're aware, no

03:09:00PM 11    motions for recusal have been filed, so this question has not

03:09:04PM 12    been considered before.  And, of course, neither Catholic

03:09:11PM 13    charities or the Catholic community foundation are parties to

03:09:16PM 14    this matter.

03:09:16PM 15             Now, in light of this, I have requested guidance from

03:09:19PM 16    the committee on codes of judicial conduct and I should

03:09:23PM 17    receive a response from the committee within a week or two.

03:09:27PM 18    The committee's response to me will guide my decision

03:09:31PM 19    concerning whether to recuse myself or not.  And naturally I

03:09:35PM 20    will take no further action in this case until this question

03:09:38PM 21    has been resolved.

03:09:41PM 22             That's all I wanted to convey with you during this

03:09:45PM 23    brief status conference and we will be in touch at the

03:09:48PM 24    appropriate time in an appropriate manner.  So once again

03:09:52PM 25    thank you for calling in.

```
03:09:55PM   1              [!ATTORNEY2]:  Your Honor this is mark NANS on behalf
03:09:58PM   2    of the debtors, may I ask a question.  Are our briefing
03:10:03PM   3    deadlines therefore suspended pending your guidance?
03:10:07PM   4              THE COURT:  Let me make no other comments right now
03:10:10PM   5    and just submit any questions you have through e-mails to my
03:10:14PM   6    office.
03:10:15PM   7              [!ATTORNEY2]:  Yes, sir.
03:10:16PM   8              THE COURT:  Okay?  All right.  Thank you very much
03:10:19PM   9    folks.
03:10:21PM  10              [!ATTORNEY3]:  Thank you Your Honor.
03:10:22PM  11              [!ATTORNEY2]:  Thank you Your Honor.
03:10:23PM  12              [!ATTORNEY1]:  Thank you Your Honor.
03:10:25PM  13              THE COURT:  You have a good afternoon
            14
            15
            16
            17
            18
            19
            20
            21
            22
            23
            24
            25
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN RE: ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESES OF NEW ORLEANS

                              Civil Action No: 22-1740
                              c/w 22-4101
                              Section "T"(2)
                              April 21, 2023


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
HEARD BEFORE THE HONORABLE GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR RICHARD TRAHANT:          Jack Edward Morris
                             Jack E. Morris, Attorney at
                             Law, LLC
                             4051 Veterans Blvd.
                             Suite 208
                             Metairie, LA 70002


FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

                             Omer Frederick Kuebel, III
                             Bradley Clay Knapp
                             Locke Lord
                             601 Poydras St.
                             Suite 2660
                             New Orleans, LA 70130


FOR ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS:

                             Mark A. Mintz
                             Samantha Oppenheim
                             Jones Walker, LLP
                             Place St. Charles
                             201 St. Charles Ave.
                             Suite 5100
                             New Orleans, LA 70170

**EXHIBIT
3**

FOR U.S. TRUSTEE:            Amanda Burnette George
                            U.S. Trustee
                            Region V, Judicial
                            Districts of LA & MS
                            400 Poydras St.
                            Suite 2110, Texaco Center
                            New Orleans, LA 70130

Official Court Reporter:    Nichelle N. Wheeler, RMR, CRR
                            500 Poydras Street, B-275
                            New Orleans, Louisiana 70130
                            (504) 589-7775

     Proceedings recorded by mechanical stenography,
transcript produced via computer.

1    **P R O C E E D I N G S**

2         (Call to order of the court.)

3         THE COURT:  Good morning, everyone.  It's Judge

4    Guidry.

5         THE CASE MANAGER:  Can everyone hear the judge?

6         MR. MINTZ:  Yes.

7         MS. GEORGE:  Yes.  Good morning, Your Honor.

8         MR. MORRIS:  Good morning, Your Honor.

9         THE COURT:  Just for clarity, let's have everyone

10   identify themselves for the record, please.

11        MR. MINTZ:  Thank you, Your Honor, Mark Mintz on

12   behalf of the debtor.

13        MR. MORRIS:  And this is Jack Morris on behalf of

14   appellant, Richard Trahant.

15        MR. KNAPP:  Brad Knapp on behalf of the creditors'

16   committee.

17        MS. GEORGE:  Good morning, Your Honor, Amanda George

18   on behalf of the U.S. Trustee.

19        THE COURT:  Okay.  Great.

20        MS. OPPENHEIM:  Good morning, Your Honor, Samantha

21   Oppenheim on behalf of the debtor.

22        MR. KUEBEL:  And good morning, Your Honor, Omer F.

23   Kuebel, III, with Locke Lord on behalf of the Official

24   Committee of Unsecured Creditors.

25        THE COURT:  Is that everyone?

1          Okay.  Last week, as you know, on April 13th, I

2    conducted a status conference to discuss a possible recusal

3    issue.  I informed you that I had requested guidance from the

4    Committee on Codes of Conduct and that committee's response

5    would guide me in my decision.

6          Now, I received a formal advisory opinion from the

7    committee on April 20th.  I also received informal advisory

8    opinions from the counsel for the committee, Robert Deyling,

9    and the chair of the committee, Judge Jennifer Elrod.

10         In its formal opinion, the committee provided the

11   following summary, which I will read for you for your

12   information:  The committee sees multiple factors that weigh

13   against the need for recusal under Canon 2 or the general

14   impartiality rule of Canon 3C(1).  First, none of the

15   charities to which you contributed some of your wind-down

16   campaign funds has been or is an actual party in any

17   proceeding before you.  Moreover, even though your

18   contributions to charities affiliated with Catholic interests

19   were generous and substantial, they amounted to less than

20   25 percent of the campaign funds you had to donate.

21         Second, your leadership as a board member of one of

22   the charities ended 15 years ago, which is a significant span

23   of time, and over a decade before the Archdiocese filed its

24   Chapter 11.  Third, you have already entered several

25   decisions and those decisions do not uniformly favor any

1    interested party, which is a concrete indication of

2    impartiality.  Finally, simply participating as a faithful

3    participant in the life of your parish and the Archdiocese of

4    which it is a part cannot amount to a reasonable basis for

5    questioning impartiality in litigation involving the church

6    without effectively forcing judges to choose between their

7    faith and their adjudicative duties.

8        Based on the facts, the committee does not see in

9    your case anything that would require a direct or explicit

10   basis for disqualification under Canon 3C(1)(a) through (e).

11   Recusal based on a risk of an appearance of impropriety under

12   Canon 2 or a reasonable basis for questioning impartiality

13   under Canon 3C(1) is inherently fact specific and often a

14   very personal decision for the judge involved.  With that

15   said, the committee does not believe a reasonable person

16   fully informed of all relevant considerations would have a

17   basis to question your impartiality or to suggest a risk of

18   an appearance of impropriety necessitating recusal in your

19   case.

20       In light of the committee's advice -- and the

21   committee falls under the Judicial Conference of the United

22   States and is comprised of more than a dozen judges from

23   around the country who volunteer their time and efforts for

24   this purpose.  Based upon that advice and based upon my

25   certainty that I can be fair and impartial, I have decided

1    not to recuse myself.

2         That concludes all I wanted to tell you in the status

3    conference.

4         All right.  Thank you very much, folks.

5         MR. MINTZ:  Thank you.

6         MS. GEORGE:  Thank you, Your Honor.

7                          *  *  *  *

8         (WHEREUPON, the proceedings were adjourned.)

9                          *  *  *  *

10                    REPORTER'S CERTIFICATE

11        I, Nichelle N. Wheeler, RMR, CRR, Official Court
     Reporter, United States District Court, Eastern District of
12   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
13   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

14

15                       /s/ Nichelle N. Wheeler
                         Official Court Reporter

16

17

18

19

20

21

22

23

24

25

# Judge stays on Catholic bankruptcy despite church donations

**AP** apnews.com/article/catholic-church-sexual-abuse-clergy-saints-law-471b6d07f3335c4452f9a58654264494

April 21, 2023

ADVERTISEMENT

By JIM MUSTIANApril 21, 2023



1 of 4

In this image from video provided by the U.S. Senate, Judge Greg Guidry speaks during a hearing for district court nominees held by the Senate Committee on the Judiciary in Washington, on Wednesday, Feb. 13, 2019. Guidry donated tens of thousands of dollars to New Orleans' Roman Catholic archdiocese and consistently ruled in favor of the church amid a contentious bankruptcy involving nearly 500 clergy sex abuse victims, The Associated Press found, an apparent conflict that could throw the case into disarray.(U.S. Senate via AP)

NEW ORLEANS (AP) — A federal judge refused Friday to recuse himself from the New Orleans Roman Catholic bankruptcy after an Associated Press report that he donated tens of thousands of dollars to archdiocese charities and consistently ruled in favor of the church in the contentious case involving nearly 500 clergy sex abuse victims.

EXHIBIT 4

U.S. District Judge Greg Guidry told attorneys in the high-profile case that a panel of federal judges he asked to review the possible conflict determined no "reasonable person" would question his impartiality despite his contributions and longstanding ties to the archdiocese.

Guidry read from the opinion of the Washington-based Committee on Codes of Conduct, which noted that none of the charities he donated to "has been or is an actual party" in the bankruptcy and that Guidry's eight years on the board of the archdiocese's charitable arm ended more than a decade before the bankruptcy.

"Based upon that advice and based upon my certainty that I can be fair and impartial, I have decided not to recuse myself," said Guidry, who oversees the bankruptcy in an appellate role.

Guidry's announcement came hours after AP published its report and more than a week after it confronted him with its findings.

Several ethics experts told AP the 62-year-old jurist should step aside from the case to avoid the appearance of conflict, even if it threatened to send the complex, three-year bankruptcy into disarray with a slew of new hearings and appeals of his decisions.

"It would create a mess and a cloud of suspicion over every ruling he's made," said Keith Swisher, a professor of legal ethics at the University of Arizona, describing the judge's donations as "more like fire than smoke."

AP's reporting on Guidry and other judges in the New Orleans bankruptcy underscores how tightly woven the church is in the city's power structure, a coziness perhaps best exemplified when executives of the NFL's New Orleans Saints secretly advised the archdiocese on public relations messaging at the height of its clergy abuse crisis.

It also comes at a fraught moment when attorneys in the bankruptcy are seeking to unseal a trove of thousands of secret church documents produced by lawsuits and an ongoing FBI investigation of clergy abuse in New Orleans going back decades. Guidry had rebuffed at least one such request to unseal some of the documents.

AP's review of campaign-finance records found that Guidry, since being nominated to the federal bench in 2019 by then-President Donald Trump, has given nearly $50,000 to local Catholic charities from leftover contributions he received after serving 10 years as a Louisiana Supreme Court justice.

Most of that giving, $36,000 of it, came in the months after the archdiocese sought Chapter 11 bankruptcy protection in May 2020 amid a crush of sexual abuse lawsuits. That included a $12,000 donation to the archdiocese's Catholic Community Foundation in September 2020 on the same day of a series of filings in the bankruptcy, and a $14,000 donation to the same charity in July of the following year.

But the advisory opinion Guidry cited Friday noted that his contributions to the Catholic charities amounted to less than 25 percent of the campaign funds he had available to donate. It also said "simply participating as a faithful participant in the life of your parish and the archdiocese of which it is a part cannot amount to a reasonable basis for questioning impartiality in litigation involving the church."

Guidry's philanthropy over the years also appears to include private donations. Newsletters issued by Catholic Charities of New Orleans, the charitable arm of the archdiocese, recognized Guidry and his wife among its donors for unspecified contributions, in 2017 listing both the judge and his campaign. The judge previously provided pro bono services and served as a board member for Catholic Charities between 2000 and 2008, a time when the archdiocese was navigating an earlier wave of sex abuse lawsuits. Catholic Charities was involved in at least one multimillion-dollar settlement to victims beaten and sexually abused at two local orphanages.

Within a year of his most recent contributions, Guidry began issuing rulings that altered the momentum of the bankruptcy and benefited the archdiocese.

Guidry upheld the removal of several members from a committee of victims seeking compensation from the church. Those plaintiffs repeatedly complained about a lack of transparency in the case and argued that the archdiocese's primary reason for seeking the legal protection was to minimize payouts. The Moody's rating agency found that the archdiocese sought bankruptcy despite having "significant financial reserves, with spendable cash and investments of over $160 million.

And just last month, Guidry affirmed a $400,000 sanction against Richard Trahant, a veteran attorney for clergy abuse victims who was accused of violating a sweeping confidentiality order when he warned a local principal that his school had hired a priest who admitted to sex abuse. Trahant, who declined to comment, has become a prominent adversary of the archdiocese, drawing attention to what he calls a conspiracy by top church officials in New Orleans to cover up clergy abuse.

Charles Geyh, a professor at Indiana University who studies judicial ethics, said Guidry's generous donations and close ties to the church are clearly reasons to question his ability to be a fair referee.

"Not only has the judge made significant financial contributions to a church whose archdiocese is a party in litigation before him, but those contributions are inextricably linked to his status as a judge," Geyh said. "The judge chose to donate the overflow of campaign funds generated to further his professional life as a judge to further his religious life in the church, which implies a connection in the judge's mind between his religious and professional identities."

In heavily Catholic New Orleans, Guidry is far from the only federal judge with longstanding ties to the archdiocese. Several of Guidry's colleagues have recused themselves from the bankruptcy or related litigation. They include U.S. District Judge Wendy Vitter, who for years worked as general counsel for the archdiocese, defending the church against a cascade of sex abuse claims before Trump nominated her to the federal bench in 2018. Another federal judge, Ivan Lemelle, serves on the board of the Catholic Community Foundation.

Yet another, U.S. District Judge Jay Zainey recused himself from cases related to the bankruptcy after publicly acknowledging the role he played in the behind-the-scenes media relations campaign that executives of the New Orleans Saints did for the archdiocese in 2018 and 2019. At the time, Zainey told The Times-Picayune he would recuse himself from future church-related cases.

But less than a year ago, Zainey quietly struck down a Louisiana law, vigorously opposed by the archdiocese, that created a so called look-back window allowing victims of sexual abuse to sue the church and other institutions no matter how long ago the alleged abuse took place. Zainey didn't respond to a request for comment.

"These are federal judges who are incredibly active in different ministries throughout the archdiocese," said James Adams, a past president of the Catholic Community Foundation who was abused by a priest as a fifth-grader in 1980. "I'm not saying they don't do good works, but it certainly raises an eyebrow when they then have cases involving the Archdiocese of New Orleans."

Jason Berry, an author who has written several books on clergy abuse and most recently a history of New Orleans, said the influence of the church on the court system in the city "stinks to high heaven."

"The larger question here is whether justice has been compromised," he said. "You're talking about 500 people whose lives have been plundered, and that's one thing many people don't have a grasp of."

———

Contact AP's global investigative team at Investigative@ap.org.



All contents © copyright 2023 The Associated Press. All rights reserved.

# Judge in Catholic bankruptcy recuses over church donations

**AP** apnews.com/article/catholic-church-sexual-abuse-clergy-saints-b2e411fed1907620b8b4137fde48c009

April 29, 2023

ADVERTISEMENT

By JIM MUSTIANtoday



1 of 4

In this image from video provided by the U.S. Senate, Judge Greg Guidry speaks during a hearing for district court nominees held by the Senate Committee on the Judiciary in Washington, on Wednesday, Feb. 13, 2019. Guidry donated tens of thousands of dollars to New Orleans' Roman Catholic archdiocese and consistently ruled in favor of the church amid a contentious bankruptcy involving nearly 500 clergy sex abuse victims, The Associated Press found, an apparent conflict that could throw the case into disarray.(U.S. Senate via AP)

A federal judge overseeing the New Orleans Roman Catholic bankruptcy recused himself in a late-night reversal that came a week after an Associated Press report showed he donated tens of thousands of dollars to the archdiocese and consistently ruled in favor of the church in the case involving nearly 500 clergy sex abuse victims.

U.S. District Judge Greg Guidry initially announced hours after the AP report that he would stay on the case, citing the opinion of fellow federal judges that no "reasonable person" could question his impartiality. But amid mounting pressure and persistent questions, he changed course late Friday in a terse, one-page filing.

"I have decided to recuse myself from this matter in order to avoid any possible appearance of personal bias or prejudice," Guidry wrote.

Read the full AP invesigation:

     – Judge stays on Catholic bankruptcy despite church donations

The 62-year-old jurist has overseen the 3-year-old bankruptcy in an appellate role, and his recusal is likely to throw the case into disarray and trigger new hearings and appeals of every consequential ruling he's made.

But legal experts say it was the only action to take under the circumstances, citing federal law that calls on judges to step aside in any proceeding in which their "impartiality might reasonably be questioned."

"This was a clear and blatant conflict that existed for some time," said Joel Friedman, a longtime legal analyst in New Orleans who is now a law professor at Arizona State University. "It creates the exact problem the rules are designed to avoid, the impression to the public that he's not an impartial decisionmaker."

Guidry's recusal underscores how tightly woven the church is in the city's power structure, a coziness perhaps best exemplified when executives of the NFL's New Orleans Saints secretly advised the archdiocese on public relations messaging at the height of its clergy abuse crisis.

AP's review of campaign-finance records showed that Guidry, since being nominated to the federal bench in 2019 by then-President Donald Trump, gave nearly $50,000 to local Catholic charities from leftover political contributions from his decade serving as a Louisiana Supreme Court justice. Most of that giving, $36,000, came in the months after the archdiocese sought Chapter 11 bankruptcy protection in May 2020 amid a crush of sexual abuse lawsuits.

Guidry also served on the board of Catholic Charities, the archdiocese's charitable arm, between 2000 and 2008, as the archdiocese was navigating an earlier wave of sex abuse lawsuits.

In the bankruptcy, Guidry frequently issued key rulings that altered the momentum of the bankruptcy and benefited the archdiocese.

Just last month, he upheld a $400,000 sanction against Richard Trahant, a veteran attorney for clergy abuse victims who was accused of violating a sweeping confidentiality order when he warned a local principal that his school had hired a priest who admitted to sex abuse. He also rebuffed at least one request to unseal secret church documents, part of a trove of records detailing clergy abuse in New Orleans going back decades.

Guidry referred the potential conflict to the Washington-based Committee on Codes of Conduct, which noted that none of the charities he donated to "has been or is an actual party" in the bankruptcy.

It also noted that Guidry's eight years on the board of Catholic Charities ended more than a decade before the bankruptcy and that his church contributions amounted to less than 25% of the campaign funds he had available to donate.

"Based upon that advice and based upon my certainty that I can be fair and impartial, I have decided not to recuse myself," Guidry told attorneys in the case on April 21.

But it was not clear what details Guidry shared with the committee, and he refused to release its advisory opinion. The opinion also raised eyebrows because one of the judges Guidry consulted on the potential conflict, Jennifer Walker Elrod, is scheduled to hear an appeal from the bankruptcy next week for the 5th U.S. Circuit Court of Appeals.

"We have no reason to rely on this secret opinion because we have no idea what the analysis is," said Kathleen Clark, a legal ethics professor at Washington University in St. Louis, adding it was "utterly reasonable to question Guidry's ability to be impartial under these circumstances."

"The public shouldn't have to rely on a judge's personal certainty about his own rectitude," Clark added. "The fact that he would even make this assertion shows how misguided and ethically blind this judge is."

Charles Hall, a spokesman for the Administrative Office of the U.S. Courts, said Guidry had no comment beyond the recusal order.

James Adams, a creditor in the bankruptcy who alleges he was abused by a priest as a fifth grader in 1980, says the judge's recusal was long overdue.

"Like the church, some federal judges will often do the right thing only after the press begins to investigate and question them," he said. "Inflated ego and arrogance can be a dangerous side effect of putting on a black robe."

———

Mustian reported from New York. Contact AP's global investigative team at Investigative@ap.org.



# Judge in archdiocese bankruptcy case recuses himself over donations scandal

theguardian.com/us-news/2023/apr/29/new-orleans-church-donation-judge-recused-bankruptcy

Ramon Antonio Vargas                                             April 29, 2023



📷 Guidry's order on Friday was a stark reversal from his earlier refusal to step down from handling appeals related to the case. Photograph: AP

Greg Guidry gave thousands to archdiocese before ruling in favor of New Orleans church in case involving nearly 500 clergy sexual abuse victims

A federal judge overseeing a bankruptcy filing from the US's second-oldest Roman Catholic archdiocese has recused himself from the case amid scrutiny of his donations to the church as well as his close professional relationship with an attorney representing archdiocesan affiliates in insurance disputes.

Greg Guidry, who was appointed to the judicial bench at New Orleans's federal courthouse by the Donald Trump White House in 2019, issued an order after 8pm on Friday recusing himself from a role handling appeals in a contentious bankruptcy involving nearly 500 clergy sexual abuse victims.

US judge who ruled in favor of church in key abuse case donated to archdiocese



Read more



It came a week after the Associated Press reported that he had donated tens of thousands of dollars to the archdiocese before consistently ruling in favor of New Orleans's Catholic church during its Chapter 11 bankruptcy filing. And Guidry's ruling came hours after the Guardian had joined the AP in asking questions about a lawyer who was involved in making those donations while his firm defended archdiocesan-related ministries – such as assisted living homes – and the church itself as an employer in medical malpractice lawsuits.

"I do not believe [recusal] is mandated, and no party has filed a motion to [recuse] me," Guidry's order read. "However, balancing my duty to decide the case with my duty to consider self-recusal if appropriate, I have decided to recuse myself from this matter in order to avoid any possible appearance of personal bias or prejudice."

Guidry's order on Friday marked a stark reversal of course from just a week earlier, when he told attorneys involved in the bankruptcy case that a federal judiciary committee on codes of conduct had approved his continuing to handle appeals related to the case despite his giving nearly $50,000 to New Orleans-area Catholic charities from leftover contributions he received after serving 10 years in the elected position of Louisiana state supreme court justice.

It also seems likely to throw a bankruptcy case which has been ongoing since 1 May 2020 into disarray because of a federal legal precedent subjecting every ruling in a matter by a recused judge to be potentially reviewed and nullified.

Bankruptcy court records show that the campaign finance committee chairperson who greenlighted Guidry's donations to the New Orleans archdiocese which serves a half-million Catholics – a local prominent attorney named John Litchfield – had been paid at least $80,000 directly from the local church. Litchfield told the Guardian late Friday morning that an associate at his firm had landed his office work defending some archdiocesan affiliates – mainly nursing homes or other senior living centers – from medical malpractice claims.

But Litchfield insisted his firm had steered well clear of the most contentious claims at the center of the bankruptcy: those of many people who claimed to have been molested as children by Catholic priests and deacons. And he argued that Guidry could retain the impartiality required of federal judges despite his support of the archdiocese and Litchfield's business with the church.

"If Greg didn't think he'd be fair, he'd recuse himself," said Litchfield, who acknowledged on Friday in his interview with the Guardian that the AP had also just contacted him about his relationship with Guidry. "I know Greg Guidry. I know him well. And he's as straight as they come."

Late Friday morning, University of Richmond law professor Carl Tobias said he believed Guidry should recuse himself when Litchfield's relationship to Guidry was described to him, citing a law requiring federal judges to avoid even the appearance of a conflict of interest.

"It does sound to me like there are enough connections between the judge and the church and the counsel … to at least ask that question" about whether Guidry should recuse himself, Tobias said. "That's a legitimate question to ask."

Meanwhile, legal ethics professor Kathleen Clark told the AP that "the public shouldn't have to rely on a judge's personal certainty about his own rectitude". She added that Guidry's initial resistance to recusal was "misguided and ethically blind".

Most of the gifts to the church by Guidry which the AP first reported last week – $36,000 – came in the months after the archdiocese asked New Orleans's federal bankruptcy court for protection from creditors while it reorganized its financial books as it was faced with a wave of sexual abuse lawsuits as well as activity restrictions associated with the Covid-19 pandemic.

Newsletters issued by the archdiocese's charitable arm even recognized Guidry and his wife among its donors for separate, private and unspecified contributions in 2017.

Once assigned to handle appeals in the bankruptcy case, Guidry denied a request to unseal some secret church documents outlining how archdiocesan officials handled clerics suspected of sexually abusing children, including more than 80 priests and deacons who the local church itself acknowledges are strongly suspected of preying on minors.

Guidry recently upheld a financially ruinous $400,000 fine against local lawyer <u>Richard Trahant</u>, who represents clergy abuse victims and was accused of violating a confidentiality order when he warned a local principal that his school was employing a priest who admitted to previously sexually molesting a teenage girl. He also upheld the expulsions of four of Trahant's clients from a committee of clerical sexual abuse survivors who are involved in the bankruptcy after word of his warning to the local school principal – who, coincidentally, is Trahant's cousin – made the news.

Furthermore, in addition to the opinion from the judiciary committee which Guidry cited when he initially indicated he would not recuse himself, the judge said in writing that he would stay on the case after seeking informal thoughts from federal appellate court judge Jennifer Walker Elrod about what to do. Elrod, meanwhile, is scheduled next week to hear an appeal from one of the expelled committee members who was represented by Trahant.

Guidry at one point provided pro bono services and served as a board member for the New Orleans archdiocese's charitable arm, which was involved in at least one multimillion-dollar settlement to victims beaten and sexually abused at two local Catholic orphanages. Two of Trahant's clients who were ousted from the committee at the center of the appeal which Elrod is scheduled to hear were abused at one of those archdiocesan orphanages in Marrero, a suburban area of New Orleans.

Guidry joins several of his colleagues in New Orleans's federal judiciary who have recused themselves from the bankruptcy or related litigation, illustrating the multitude of links shared by the region's legal establishment and the local archdiocese.

One of those judges previously worked as the archdiocese's general counsel and is married to a former US senator, David Vitter. A second has served on a non-profit which supports numerous archdiocesan ministries, and another has acknowledged a role in behind-the-scenes media relations campaigns that executives of the National Football League's New Orleans Saints team helped the archdiocese mount after prominent media reporting on church sexual abuse cases in 2018 and 2019.

The Guardian asked Guidry, through a US federal courts spokesperson, whether he had told the judiciary committee about either his role with the orphanages or his relationship with Litchfield. The spokesperson replied with Guidry's motion to recuse himself.

Guidry's recusal comes as federal judges' relationships with parties who have business before their courts are being examined even at the highest levels.

ProPublica recently <u>reported</u> the close friendship between Clarence Thomas, the senior conservative on the US supreme court, and the Republican megadonor Harlan Crow.

Without declaring them, Thomas received from Crow extensive gifts including luxury travel and resort stays. Crow also bought a home in which Thomas's mother lives and donated money to groups connected to Ginni Thomas, the justice's far-right activist wife.

Thomas and Crow have denied wrongdoing.

On Tuesday, Politico reported that another conservative, Neil Gorsuch, pocketed up to $500,000 from a property sale shortly after joining the court but did not disclose that the buyer was the chief executive of a law firm with business before the court.

Gorsuch has not commented while the firm executive has denied wrongdoing.

You've read 9 articles in the last year

Article count

I hope you appreciated this article. Before you move on, I was hoping you would consider taking the step of supporting the Guardian's journalism.

From Elon Musk to Rupert Murdoch, a small number of billionaire owners have a powerful hold on so much of the information that reaches the public about what's happening in the world. The Guardian is different. We have no billionaire owner or shareholders to consider. Our journalism is produced to serve the public interest – not profit motives.

And we avoid the trap that befalls much US media – the tendency, born of a desire to please all sides, to engage in false equivalence in the name of neutrality. While fairness guides everything we do, we know there is a right and a wrong position in the fight against racism and for reproductive justice. When we report on issues like the climate crisis, we're not afraid to name who is responsible. And as a global news organization, we're able to provide a fresh, outsider perspective on US politics – one so often missing from the insular American media bubble.

Around the world, readers can access the Guardian's paywall-free journalism because of our unique reader-supported model. That's because of people like you. Our readers keep us independent, beholden to no outside influence and accessible to everyone – whether they can afford to pay for news, or not.

**If you can, please consider supporting the Guardian today. Thank you.**

Betsy Reed

Editor, Guardian US

# Contribution

frequency

## Contribution amount

Continue →



   

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 22-01738** |
| | ) | |
| **ROMAN CATHOLIC CHURCH OF THE** | ) | **JUDGE GUIDRY** |
| **ARCHDIOCESE OF NEW ORLEANS** | ) | |
| | ) | **MAGISTRATE DOUGLAS** |

---

## MOTION TO VACATE JUDGMENT

NOW INTO COURT come Plaintiffs/Appellants, abuse survivors and ex-committee members of the Unsecured Creditors Committee James Adams, Jackie Berthelot, Eric Johnson, and Theodore Jackson who respectfully submit the instant *Motion to Vacate Judgment*, [Rec. Doc. 39] and *Order* [Rec. Doc. 38], pursuant to F.R.C.P. Rule 60(b).

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

**EXHIBIT 5**

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA 70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for James Adams, Jackie Berthelot,
Theodore Jackson, and Eric Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by operation of

the Court's electronic filing system on this 30th day of April, 2023.

S/Soren E. Gisleson

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:                                          )      CASE NO. 22-01738
                                                )
ROMAN CATHOLIC CHURCH OF THE    )      JUDGE GUIDRY
ARCHDIOCESE OF NEW ORLEANS      )
                                                )      MAGISTRATE DOUGLAS
                                                )

<u>**MEMORANDUM IN SUPPORT OF MOTION TO VACATE JUDGMENT**</u>

NOW INTO COURT come Plaintiffs/Appellants, abuse survivors and ex-committee members of the Unsecured Creditors Committee James Adams, Jackie Berthelot, Eric Johnson, and Theodore Jackson who respectfully submit the instant *Memorandum in Support of their Motion to Vacate Judgment*, pursuant to F.R.C.P. Rule 60(b). Appellants respectfully submit that the Court's August 11, 2022 Order granting the Archdiocese's Motion to Dismiss [Rec Doc. 38], attached as Exhibit 1, and the Judgment entered as a result [Rec. Doc. 39], attached as Exhibit 2, should be vacated for the below reasons.

**BACKGROUND**

On May 1, 2020, the Archdiocese for the Roman Catholic Church of New Orleans ("Archdiocese") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code. The Archdiocese's primary reason for filing for bankruptcy was the pending sexual abuse lawsuits. More than 450 proof of claims on behalf of sexual abuse survivors have been filed into the bankruptcy.

On May 20, 2020, the United States Trustee ("Trustee") appointed Appellants to serve on the Official Committee of Unsecured Creditors ("Committee"). *U.S. Trustee Notice of Appointment of Unsecured Creditor's Committee*, at 1-2 (05/20/20), attached as Exhibit 1. The Trustee chose Appellants after interviews and reviewing their applications. The Trustee decided

1

that Appellants adequately represented the interests of the other unsecured creditors.  In order to serve on the Committee, Appellants agreed to publicly reveal their names.  *U.S. Trustee Notice of Appointment of Unsecured Creditor's Committee*, at 1-2 (05/26/20), attached as Exhibit 2. Appellants comprised two-thirds of the people (four of the six) serving on the Committee who represented childhood sexual abuse survivors.

On January 20, 2022, the Archdiocese filed under seal a *Motion for Entry of an Order:  (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of a Protective Order*.  The Archdiocese filed a redacted version of the motion at the same time.  The Archdiocese's motion alleged a protective order violation as it related to a priest working at a school who had a credible finding of sexual abuse against him in the past.  The Archdiocese's motion did not request anyone to be removed from the Committee and conceded that it did not know the identity of any person who may have committed an alleged protective order violation.

Between January and April 2022, informal discovery was exchanged between the Archdiocese, the Committee, and the school at issue to help determine whether a protective order violation occurred.  The discovery was never filed and, accordingly, is not part of the record on this appeal.   Appellants also filed Declarations with the Bankruptcy Court explaining that they never violated the protective order, but the Bankruptcy Court did not read them before ordering the Trustee to investigate.

On April 25, 2022, the Bankruptcy Court ordered the Trustee to conduct an investigation into the alleged protective order violation.  The Bankruptcy Court ordered the investigation after reviewing the school's discovery responses. The Bankruptcy Court identified the scope and timeframe of the Trustee's investigation:  "to file under seal and hand-deliver to the Court a

Statement of Position on or before Friday, June 3, 2022 as to the allegations made by the Debtor in the Motion regarding the dissemination of highly confidential information governed by the Protective Order in this case made between December 2021 and January 2022 to third parties and the media."

In the same order, the Bankruptcy Court informed the parties: "Upon reviewing the United States Trustee's Statement of Position, the Court will schedule a further hearing to determine what action, if any, should be taken." *Id.* (emphasis supplied). The Court authorized the Trustee to conduct discovery pursuant to Rules 2004, 7033, 7034, and 7036 of the Federal Rules of Bankruptcy Procedure.

On April 26, 2022, the Archdiocese withdrew its motion. *See Notice of Withdrawal of Debtor's Motion for Entry of Order: Compelling the Tort Committee and Its Counsel to Answer Identified Questions and Setting an Evidentiary Hearing on Sanctions*, at 1, attached as Exhibit 3. No other motion or request to remove any committee member (or sanction any individual) was pending when the Bankruptcy Court ordered the Trustee to remove Appellants from the Committee.

In fact, throughout the entirety of the proceedings related to the alleged protective order violation, no party ever requested on the record that any person be removed from the Committee. No party ever filed a motion or requested on the record that sanctions against a specific person should be levied, much less what those sanctions should include.

On June 3, 2022, the Trustee filed its Report, statements, and supporting documents under seal. Appellants were never provided access to these documents. To this day, Appellants have not seen them. Appellants do not know what the Report's findings or conclusions are. Appellants have never read the witness statements. Appellants were also not allowed to participate in the

Trustee's investigation and so could not ask questions of witnesses. Appellants' only interaction to the investigation was when Appellants James Adams, Eric Johnson, and Theodore Jackson were questioned under oath. Even then, they were not allowed to read and sign their statements and still have never received copies of them.[1]

On June 7, 2022, two business days later, the Bankruptcy Court *sua sponte* ordered the Trustee to remove Appellants from the Committee. No motion was pending. No party had moved (or requested) for the relief of removing any committee members from the Committee. The Bankruptcy Court failed to provide any notice or hearing. The Bankruptcy Court never scheduled a hearing after receiving the Trustee's Report as it informed the parties that it would in its April 25, 2022 Order instructing the Trustee to investigate.

The Order reasoned that Appellants' removal from the Committee was the result of one of their lawyer's alleged violation of the protective order which the Bankruptcy Court "imputed" to Appellants without any separate finding of wrong-doing on their part. As such, the removal was a sanction for their lawyer's alleged violation. However, the Bankruptcy Court failed to provide notice or an opportunity to be heard before issuing the sanction of removal from the Committee. The Bankruptcy Court's Order also failed to include a finding of "bad faith", failed to employ the "clear and convincing" evidentiary standard, and failed to include the specificity needed to allow appellate review of bad faith. The Order is fatally vague, failing to identify the alleged information that violated the protective order, failing to identify the recipient of that information, and failing to identify any host of the fundamental who-what-when-how of the violation – including the

---

[1] After the Notice of Appeal was filed in this case, one of the attorneys representing Appellants, Mr. Trahant, did receive access to the Report and materials as part of a later hearing. However, the Bankruptcy Court precluded Trahant from providing these materials to Appellants and co-counsel.

threshold issue of whether the untold leaked information deserved to be designated as "confidential" in the first instance.

The Bankruptcy Court placed all of its reasons, support, and factual basis squarely on the Trustee's Report, statements, and documents attached to the Trustee's Report. None of these documents have ever been provided to Appellants. To this day, Appellants have not read them. Appellants do not know what the Report concludes, reasons, or discusses. Appellants were not allowed to participate in the investigation. Appellants do not even know who was questioned as part of the investigation, other than themselves.

On June 10, 2022, Appellants filed an *Expedited Notice of Appeal* to the District Court for the Eastern District of Louisiana. Appellants filed a *Motion for Expedited Briefing* which was granted. Appellants also filed a *Motion to Supplement the Record* to add the sealed documents such as the Report and statements. The District Court granted the motion. Appellants also filed a *Motion to Access the Sealed Record* which was not ruled upon before the appeal was dismissed.

On July 19, 2022, the Archdiocese filed a Motion to Dismiss Appeal for lack of standing and lack of jurisdiction. On August 11, 2022, the District Court granted the motion and dismissed the appeal, finding that Appellants lacked standing because they did not articulate a pecuniary harm. [Rec. Doc. 38] The District Court entered a Judgment as a result. [Rec. Doc. 39]

On August 16, 2022, Appellants timely filed a Notice of Appeal to the Fifth Circuit Court of Appeal. A number of motions were filed, briefing of the merits were completed, and oral argument was scheduled for May 3, 2023.

**Judge Guidry Recuses Himself**

On April 28, 2023, Judge Guidry issued an order recusing himself in *In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1740 c/w 22-4104, an appeal from the Archdiocese of New Orleans Bankruptcy which concerns the same parties and addresses the same June 7, 2022 Sanction Order issued by the Bankruptcy Court that is the subject of this appeal. Judge Guidry's recusal order states:

> I do not believe disqualification pursuant to 28 U.S.C. §455 is mandated, and no party has filed a motion to disqualify me pursuant to 28 U.S.C. § 144; however, balancing my duty to decide the case with my duty to consider self-recusal if appropriate, I have decided to recuse myself from this matter in order to avoid any possible appearance of personal bias or prejudice.

*In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1740 c/w 22-4104, at 1 (04/28/23) [Bkrptcy No. 10-10846], attached as Exhibit 4.

Judge Guidry issued the recusal order *sua sponte*. No party had filed a motion to recuse. Judge Guidry never specifically identified on the record the factual basis for his recusal. Judge Guidry had previously conducted two status conferences in which he vaguely alluded to his concerns.

On April 13, 2023, Judge Guidry *sua sponte* called a telephone status conference in which he stated as follows:

> Now, it has been brought to my attention that past charitable donations to New Orleans Catholic charities and the Catholic Community Foundation as well as my time as a board member for New Orleans Catholic Charities approximately from 2000 to 2008 could possibly be a reason for me to consider recusing myself in this case. As you're aware, no motions for recusal have been filed, so this question has not been considered before. And, of course, neither Catholic charities or the Catholic community foundation are parties to this matter.

6

> Now, in light of this, I have requested guidance from the committee on codes of judicial conduct and I should receive a response from the committee within a week or two. The committee's response to me will guide my decision concerning whether to recuse myself or not. And naturally I will take no further action in this case until this question has been resolved. That's all I wanted to convey with you during this brief status conference and we will be in touch at the appropriate time in an appropriate manner.

*04/13/23 Status Conference Transcript (Rough Draft)*, at 2-3, attached as Exhibit 5.

On April 21, 2023, Judge Guidry called another *sua sponte* telephone status conference in which he stated as follows:

> Last week, as you know, on April 13th, I conducted a status conference to discuss a possible recusal issue. I informed you that I had requested guidance from the Committee on Codes of Conduct and that committee's response would guide me in my decision.

> Now, I received a formal advisory opinion from the committee on April 20th. I also received informal advisory opinions from the counsel for the committee, Robert Deyling, and the chair of the committee, Judge Jennifer Elrod.

> In its formal opinion, the committee provided the following summary, which I will read for you for your information: The committee sees multiple factors that weigh against the need for recusal under Canon 2 or the general impartiality rule of Canon 3C(1). First, none of the charities to which you contributed some of your wind-down campaign funds has been or is an actual party in any proceeding before you. Moreover, even though your contributions to charities affiliated with Catholic interests were generous and substantial, they amounted to less than 25 percent of the campaign funds you had to donate.

> Second, your leadership as a board member of one of the charities ended 15 years ago, which is a significant span of time, and over a decade before the Archdiocese filed its Chapter 11. Third, you have already entered several decisions and those decisions do not uniformly favor any interested party, which is a concrete indication of impartiality. Finally, simply participating as a faithful participant in the life of your parish and the Archdiocese of which it is a part cannot amount to a reasonable basis for questioning impartiality in litigation involving the church without effectively forcing judges to choose between their faith and their adjudicative duties.

> Based on the facts, the committee does not see in your case anything that would require a direct or explicit basis for disqualification under Canon 3C(1)(a) through (e). Recusal based on a risk of an appearance of impropriety under Canon 2 or a reasonable basis for questioning impartiality under Canon 3C(1) is inherently fact specific and often a very personal decision for the judge involved. With that said, the committee does not believe a reasonable person fully informed of all relevant considerations would have a basis to question your impartiality or to suggest a risk of an appearance of impropriety necessitating recusal in your case.
>
> In light of the committee's advice -- and the committee falls under the Judicial Conference of the United States and is comprised of more than a dozen judges from around the country who volunteer their time and efforts for this purpose. <u>Based upon that advice and based upon my certainty that I can be fair and impartial, I have decided not to recuse myself.</u>
> That concludes all I wanted to tell you in the status conference.

*04/21/23 Status Conference Transcript*, at 4-6 (emphasis supplied), attached as Exhibit 6.

One week later, Judge Guidry reversed course and recused himself without explanation or fully disclosing the factual basis for his recusal. As a result, it is not clear the factual basis for his recusal or why he reversed his decision. It is also not clear what changed from the April 21, 2023 status conference when he decided he would not recuse himself, expressing that he was "certain" that he could be "fair and impartial", to his decision one week later to recuse himself to avoid the appearance of impropriety.

It is known, however, that a number of newspaper articles were being published around this time. At least three newspaper articles have been written about Judge Guidry's relationship with the Archdiocese of New Orleans and its related entities – one before he recused himself and two after his recusal. *See Judge Stays on Catholic Bankruptcy Despite Church Donations*, AP News (04/21/23); *Judge in Catholic Bankruptcy Recuses Over Church Donations*, AP News (04/29/23); *Judge in Archdiocese Bankruptcy Case Recuses Himself Over Donations Scandal*, The Guardian (04/29/23), attached *in globo* as Exhibit 7.

These three articles provide more specifics than Judge Guidry. For example, the articles represent: (a) Judge Guidry donated nearly $50,000 to Archdiocese related entities; (b) approximately $36,000 of those donations were made after the Archdiocese filed for bankruptcy and Judge Guidry was assigned as the district judge overseeing it; (c) the donations were made from Judge Guidry's left over campaign funds when he served on the Louisiana Supreme Court years ago; (d) Judge Guidry's lawyer presently serves as a lawyer for the Archdiocese during the bankruptcy; and (e) Judge Guidry served on the board of a Catholic fundraising board from 2000-08 during which the time the Archdiocese was navigating an earlier wave of sex abuse cases for the facility known as Madonna Manor/Hope Haven – the same facility in which two of the Appellants in this case were raped.

### Judge Guidry's Order Dismissing the Appeal [Rec. Doc. 38] and the resulting Judgment [Rec. Doc. 39] Must Be Vacated

Appellants move to vacate the Court's August 11, 2022 Order dismissing the appeal and the resulting Judgment based on F.R.C.P. Rule 60(b). They must be vacated because Judge Guidry should have recused himself in this case before considering any factual or legal issues with this case. Judge Guidry's recusal order, while alluding only to 28 U.S.C. 455(a) as the basis for his recusal, should also have included Section 455(b). These financial entanglements with the Archdiocese adequately form a basis for mandatory recusal under Section 455(b).

The United States Supreme Court has held that a Rule 60(b) motion can be the appropriate vehicle to vacate a judgment issued by judge who should have recused himself but failed to do so before ruling:

> Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all § 455(a) violations. We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in

> other cases, and the risk of undermining the public's confidence in the
> judicial process. We must continuously bear in mind that "to perform its
> high function in the best way 'justice must satisfy the appearance of
> justice.'" *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed.
> 942 (1955) (citation omitted).

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864, 108 S. Ct. 2194, 2205, 100 L. Ed. 2d 855 (1988). A Rule 60(b) motion is also appropriate for vacating a judgment pursuant to mandatory recusal under Section 455(b). *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003) (applying the same *Liljeberg* factors to vacating a judgment based on mandatory recusal under Section 455(b) as Section 455(a)).

The Court's order and judgment must be vacated pursuant to the *Liljeberg* factors. The significant injustice to Appellants, the lack of injustice to the Archdiocese, the increased risk of injustice in other related cases, and the inevitable (if not already occurring) erosion of the public's confidence in the judicial process overwhelmingly favor vacating the district court judgment.

As a threshold matter, there can be no dispute that Judge Guidry must recuse himself from this case. The recusal has already been issued in the companion case before the District Court. The same parties, legal rulings, and factual predicate for recusal exist in both cases. Judge Guidry's recusal in the companion case has already been decided and there are no facts or law that would distinguish his reasons for recusal between the two cases.

The first *Liljeberg* factor, the risk of injustice to the parties, weighs heavily in favor of Appellants. Appellants will suffer injustice because the companion case will have its Judgment vacated due to Judge Guidry's recusal but the Appellants' Order and Judgment would not be vacated – even though they concern the same Bankruptcy Court ruling and essentially involve the

same parties.  Appellants can re-file a motion to consolidate both cases to further promote judicial efficiency and fairness.[2]

On the other hand, there is no risk of injustice to the Archdiocese.  The Archdiocese will remain a party in the companion appeal and be required to address all of these same issues.  The Archdiocese, in fact, will likely expend less time and effort by addressing the issues one time in one consolidated case.

The second *Liljeberg* factor, the risk that the denial of relief will produce injustice in other cases, again significantly favors vacating the Judgment.  Because there is a companion case addressing many of the same issues, there is created a significant risk of inconsistent results.  The new judge who receives the case in which Judge Guidry already recused himself will need to revisit all previous orders, including the merits.  Resolution of that case could result in a decision that overrules the June 7, 2022 Sanction Order.

The third *Liljeberg* factor, the risk of undermining the public's confidence in the judicial process, falls squarely in Appellants' favor.  If the Court proceeds to the merits, then public confidence in the fairness of the federal judicial system will suffer.  As the extensive press coverage has indicated, there is intense public interest in the Archdiocese bankruptcy generally, the approximately 500 claims of sexual abuse filed into the bankruptcy, and the manner with which the Archdiocese is being treated by the judiciary, especially in terms of the closeness between the Archdiocese and the judges of the Eastern District of Louisiana.  To not vacate the Judgment when the Appellants were denied notice and a hearing before the bankruptcy court and summarily

---

[2] Judge Guidry dismissed the appeal before ruling on Appellants' *Motion to Consolidate* the two appeals, despite having partial consent of the parties.  [Rec. Doc. 21]

11

dismissed in the district court would convey a message to the public that sexual abuse survivors are unable to find a fair forum in federal court.

## CONCLUSION

For all of the aforementioned argument, law, and facts, Appellants respectfully request that this Court vacate its Judgment dismissing the case.

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA  70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for James Adams, Jackie Berthelot, Theodore Jackson, and Eric Johnson*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served on all counsel of record by operation of

the Court's electronic filing system on this 30th day of April, 2023.

S/Soren E. Gisleson

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 22-01738 |
| | ) | |
| ROMAN CATHOLIC CHURCH OF THE | ) | JUDGE GUIDRY |
| ARCHDIOCESE OF NEW ORLEANS | ) | |
| | ) | MAGISTRATE DOUGLAS |

---

### MOTION TO DISQUALIFY

NOW INTO COURT come Plaintiffs/Appellants, abuse survivors and ex-committee members of the Unsecured Creditors Committee James Adams, Jackie Berthelot, Eric Johnson, and Theodore Jackson who respectfully submit the instant *Memorandum in Support of their Motion to Disqualify*, pursuant to 28 U.S.C. §§ 455(a)&(b) as well as 28 U.S.C. § 144.

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

**EXHIBIT 6**

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA 70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for James Adams, Jackie Berthelot,
Theodore Jackson, and Eric Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by operation of

the Court's electronic filing system on this 30th day of April, 2023.

S/Soren E. Gisleson

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 22-01738** |
| | ) | |
| **ROMAN CATHOLIC CHURCH OF THE** | ) | **JUDGE GUIDRY** |
| **ARCHDIOCESE OF NEW ORLEANS** | ) | |
| | ) | **MAGISTRATE DOUGLAS** |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY

NOW INTO COURT come Plaintiffs/Appellants, abuse survivors and ex-committee members of the Unsecured Creditors Committee James Adams, Jackie Berthelot, Eric Johnson, and Theodore Jackson who respectfully submit the instant *Memorandum in Support of their Motion to Disqualify* pursuant to 28 U.S.C. §§ 455(a)&(b).[1]

## BACKGROUND

On May 1, 2020, the Archdiocese for the Roman Catholic Church of New Orleans ("Archdiocese") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code. The Archdiocese's primary reason for filing for bankruptcy was the sexual abuse lawsuits pending at the time. More than 450 proof of claims on behalf of sexual abuse survivors have been filed into the bankruptcy.

On May 20, 2020, the United States Trustee ("Trustee") appointed Appellants to serve on the Official Committee of Unsecured Creditors ("Committee"). *U.S. Trustee Notice of Appointment of Unsecured Creditor's Committee*, at 1-2 (05/20/20), attached as Exhibit 1. The Trustee chose Appellants after interviews and reviewing their applications. The Trustee decided

---

[1] Appellants also submit that Judge Guidry should be disqualified pursuant to 28 U.S.C. § 144, though no affidavit is being submitted at this time. Appellants may supplement its motion with an affidavit before the submission date.

that Appellants adequately represented the interests of the other unsecured creditors.  In order to serve on the Committee, Appellants agreed to publicly reveal their names.  *U.S. Trustee Notice of Appointment of Unsecured Creditor's Committee*, at 1-2 (05/26/20), attached as Exhibit 2.  Appellants comprised two-thirds of the people (four of the six) serving on the Committee that represented childhood sexual abuse survivors.

On January 20, 2022, the Archdiocese filed under seal a *Motion for Entry of an Order:  (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of a Protective Order*.  The Archdiocese filed a redacted version of the motion at the same time.  The Archdiocese's motion alleged a protective order violation as it related to a priest working at a school who had a credible finding of sexual abuse against him in the past.  The Archdiocese's motion did not request anyone to be removed from the Committee and conceded that it did not know the identity of any person who may have committed an alleged protective order violation.

Between January and April 2022, informal discovery was exchanged between the Archdiocese, the Committee, and the school at issue to help determine whether a protective order violation occurred.  The discovery was never filed and, accordingly, is not part of the record on this appeal.   Appellants also filed Declarations with the Bankruptcy Court explaining that they never violated the protective order, but the Bankruptcy Court did not read them before ordering the Trustee to investigate.

On April 25, 2022, the Bankruptcy Court ordered the Trustee to conduct an investigation into the alleged protective order violation.  The Bankruptcy Court ordered the investigation after reviewing the school's discovery responses.  *Id.* at 2.  The Bankruptcy Court identified the scope and timeframe of the Trustee's investigation:  "to file under seal and hand-deliver to the Court a

2

Statement of Position on or before Friday, June 3, 2022 as to the allegations made by the Debtor in the Motion regarding the dissemination of highly confidential information governed by the Protective Order in this case made between December 2021 and January 2022 to third parties and the media." *Id.*

In the same order, the Bankruptcy Court informed the parties: "<u>Upon reviewing the United States Trustee's Statement of Position, the Court will schedule a further hearing to determine what action, if any, should be taken</u>." *Id.* (emphasis supplied). The Court authorized the Trustee to conduct discovery pursuant to Rules 2004, 7033, 7034, and 7036 of the Federal Rules of Bankruptcy Procedure.

On April 26, 2022, the Archdiocese withdrew its motion. *See Notice of Withdrawal of Debtor's Motion for Entry of Order: Compelling the Tort Committee and Its Counsel to Answer Identified Questions and Setting an Evidentiary Hearing on Sanctions*, at 1, attached as Exhibit 3. No other motion or request to remove any committee member (or sanction any individual) was pending when the Bankruptcy Court ordered the Trustee to remove Appellants from the Committee.

In fact, throughout the entirety of the proceedings related to the alleged protective order violation, no party ever requested on the record that any person be removed from the Committee. No party ever filed a motion or requested on the record that sanctions against a specific person should be levied, much less what those sanctions should include.

On June 3, 2022, the Trustee filed its Report, statements, and supporting documents under seal. Appellants were never provided access to these documents. To this day, Appellants have not seen them. Appellants do not know what the Report's findings or conclusions are. Appellants have never read the witness statements. Appellants were also not allowed to participate in the

Trustee's investigation and so could not ask questions of witnesses. Appellants' only interaction to the investigation was when Appellants James Adams, Eric Johnson, and Theodore Jackson were questioned under oath. Even then, they were not allowed to read and sign their statements and still have never received copies of them.[2]

On June 7, 2022, two business days later, the Bankruptcy Court *sua sponte* ordered the Trustee to remove Appellants from the Committee. No motion was pending. No party had moved (or requested) for the relief of removing any committee members from the Committee. The Bankruptcy Court failed to provide any notice or hearing. The Bankruptcy Court never scheduled a hearing after receiving the Trustee's Report as it informed the parties that it would in its April 25, 2022 Order instructing the Trustee to investigate.

The Order reasoned that Appellants' removal from the Committee was the result of one of their lawyer's alleged violation of the protective order which the Bankruptcy Court "imputed" to Appellants without any separate finding of wrong-doing on their part. As such, the removal was a sanction for their lawyer's alleged violation. However, the Bankruptcy Court failed to provide notice or an opportunity to be heard before issuing the sanction of removal from the Committee. The Bankruptcy Court's Order also failed to include a finding of "bad faith", failed to employ the "clear and convincing" evidentiary standard, and failed to include the specificity needed to allow appellate review of bad faith. The Order is fatally vague, failing to identify the alleged information that violated the protective order, failing to identify the recipient of that information, and failing to identify any host of the fundamental who-what-when-how of the violation – including the

---

[2] After the Notice of Appeal was filed in this case, one of the attorneys representing Appellants, Mr. Trahant, did receive access to the Report and materials as part of a later hearing. However, the Bankruptcy Court precluded Trahant from providing these materials to Appellants and co-counsel.

threshold issue of whether the untold leaked information deserved to be designated as "confidential" in the first instance.

The Bankruptcy Court placed all of its reasons, support, and factual basis squarely on the Trustee's Report, statements, and documents attached to the Trustee's Report. None of these documents have ever been provided to Appellants. To this day, Appellants have not read them. Appellants do not know what the Report concludes, reasons, or discusses. Appellants were not allowed to participate in the investigation. Appellants do not even know who was questioned as part of the investigation, other than themselves.

On June 10, 2022, Appellants filed an *Expedited Notice of Appeal* to the District Court for the Eastern District of Louisiana. Appellants filed a *Motion for Expedited Briefing* which was granted. Appellants also filed a *Motion to Supplement the Record* to add the sealed documents such as the Report and statements. The District Court granted the motion. Appellants also filed a *Motion to Access the Sealed Record* which was not ruled upon before the appeal was dismissed.

On July 19, 2022, the Archdiocese filed a Motion to Dismiss Appeal for lack of standing and lack of jurisdiction. On August 11, 2022, the District Court granted the motion and dismissed the appeal, finding that Appellants lacked standing because they did not articulate a pecuniary harm. The District Court did not address the Archdiocese's jurisdictional argument.

On August 16, 2022, Appellants timely filed a Notice of Appeal to the Fifth Circuit Court of Appeal. A number of motions were filed, briefing of the merits were completed, and oral argument was scheduled for May 3, 2023.

**Judge Guidry Recuses Himself**

On April 28, 2023, Judge Guidry issued an order recusing himself in *In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1740 c/w 22-4104, at 1 (04/28/23) [Bkrptcy No. 10-10846], an appeal from the Archdiocese of New Orleans Bankruptcy which essentially concerns the same parties and addresses the same June 7, 2022 Sanction Order issued by the Bankruptcy Court that is the subject of this appeal. Judge Guidry's recusal order states:

> I do not believe disqualification pursuant to 28 U.S.C. §455 is mandated, and no party has filed a motion to disqualify me pursuant to 28 U.S.C. § 144; however, balancing my duty to decide the case with my duty to consider self-recusal if appropriate, I have decided to recuse myself from this matter in order to avoid any possible appearance of personal bias or prejudice.

*In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1740 c/w 22-4104, at 1 (04/28/23) [Bkrptcy No. 10-10846], attached as Exhibit 4.

Judge Guidry issued the recusal order *sua sponte*. No party had filed a motion to recuse. Judge Guidry never specifically identified on the record the factual basis for his recusal. Judge Guidry had previously conduct two status conferences in which he vaguely alluded to his concerns.

On April 13, 2023, Judge Guidry *sua sponte* called a telephone status conference in which he stated as follows:

> Now, it has been brought to my attention that past charitable donations to New Orleans Catholic charities and the Catholic Community Foundation as well as my time as a board member for New Orleans Catholic Charities approximately from 2000 to 2008 could possibly be a reason for me to consider recusing myself in this case. As you're aware, no motions for recusal have been filed, so this question has not been considered before. And, of course, neither Catholic charities or the Catholic community foundation are parties to this matter.
>
> Now, in light of this, I have requested guidance from the committee on codes of judicial conduct and I should receive a response from the committee within a week or two. The committee's response to me will guide

6

my decision concerning whether to recuse myself or not. And naturally I will take no further action in this case until this question has been resolved. That's all I wanted to convey with you during this brief status conference and we will be in touch at the appropriate time in an appropriate manner.

*04/13/23 Status Conference Transcript (Rough Draft)*, at 2-3, attached as Exhibit 5.

On April 21, 2023, Judge Guidry called another *sua sponte* telephone status conference in which he stated as follows:

Last week, as you know, on April 13th, I conducted a status conference to discuss a possible recusal issue. I informed you that I had requested guidance from the Committee on Codes of Conduct and that committee's response would guide me in my decision.

Now, I received a formal advisory opinion from the committee on April 20th. I also received informal advisory opinions from the counsel for the committee, Robert Deyling, and the chair of the committee, Judge Jennifer Elrod.

In its formal opinion, the committee provided the following summary, which I will read for you for your information: The committee sees multiple factors that weigh against the need for recusal under Canon 2 or the general impartiality rule of Canon 3C(1). First, none of the charities to which you contributed some of your wind-down campaign funds has been or is an actual party in any proceeding before you. Moreover, even though your contributions to charities affiliated with Catholic interests were generous and substantial, they amounted to less than 25 percent of the campaign funds you had to donate.

Second, your leadership as a board member of one of the charities ended 15 years ago, which is a significant span of time, and over a decade before the Archdiocese filed its Chapter 11. Third, you have already entered several decisions and those decisions do not uniformly favor any interested party, which is a concrete indication of impartiality. Finally, simply participating as a faithful participant in the life of your parish and the Archdiocese of which it is a part cannot amount to a reasonable basis for questioning impartiality in litigation involving the church without effectively forcing judges to choose between their faith and their adjudicative duties.

Based on the facts, the committee does not see in your case anything that would require a direct or explicit basis for disqualification under Canon 3C(1)(a) through (e). Recusal based on a risk of an appearance of impropriety under Canon 2 or a reasonable basis for questioning impartiality

7

under Canon 3C(1) is inherently fact specific and often a very personal decision for the judge involved. With that said, the committee does not believe a reasonable person fully informed of all relevant considerations would have a basis to question your impartiality or to suggest a risk of an appearance of impropriety necessitating recusal in your case.

In light of the committee's advice -- and the committee falls under the Judicial Conference of the United States and is comprised of more than a dozen judges from around the country who volunteer their time and efforts for this purpose. <u>Based upon that advice and based upon my certainty that I can be fair and impartial, I have decided not to recuse myself.</u>
That concludes all I wanted to tell you in the status conference.

*04/21/23 Status Conference Transcript*, at 4-6 (emphasis supplied), attached as Exhibit 6.

One week later, Judge Guidry reversed course and recused himself without explanation or fully disclosing the factual basis for his recusal. As a result, it is not clear the factual basis for his recusal or why he reversed his decision. It is also not clear what changed from the April 21, 2023 status conference when he decided he would not recuse himself, expressing that he was "certain" that he could be "fair and impartial", to his decision one week later to recuse himself to avoid the appearance of impropriety.

It is known, however, that a number of newspaper articles were being published around this time. At least three newspaper articles have been written about Judge Guidry's relationship with the Archdiocese of New Orleans and its related entities – one before he recused himself and two after his recusal. *See Judge Stays on Catholic Bankruptcy Despite Church Donations*, AP News (04/21/23); *Judge in Catholic Bankruptcy Recuses Over Church Donations*, AP News (04/29/23); *Judge in Archdiocese Bankruptcy Case Recuses Himself Over Donations Scandal*, The Guardian (04/29/23), attached *in globo* as Exhibit 7.

These three articles provide more specifics than Judge Guidry. For example, the articles represent: (a) Judge Guidry donated nearly $50,000 to Archdiocese related entities; (b) approximately $36,000 of those donations were made after the Archdiocese filed for bankruptcy

and Judge Guidry was assigned as the district judge overseeing it; (c) the donations were made from Judge Guidry's left over campaign funds when he served on the Louisiana Supreme Court years ago; (d) Judge Guidry's lawyer presently serves as a lawyer for the Archdiocese during the bankruptcy;  and (e) Judge Guidry served on the board of a Catholic fundraising organization from 2000-08 during the time the Archdiocese was navigating an earlier wave of sex abuse cases for the facility known as Madonna Manor/Hope Haven – the same facility in which two of the Appellants in this case were raped as children.

### Disqualification in this Case is Also Required

The Court is disqualified in this case for all of the reasons it disqualified itself in the companion case.  Disqualification has already been issued in the companion case before the District Court.  The same parties, legal rulings, and factual predicate for recusal exist in both cases. Judge Guidry's recusal in the companion case has already been decided and there are no facts or law that would distinguish his reasons for recusal between the two cases.

The Court apparently disqualified itself based on a relationship with the Archdiocese of New Orleans, including apparent financial entanglements.  The Archdiocese is a party to this case, and the appeal arises from the Archdiocese bankruptcy.   Both this appeal and the companion one address the Bankruptcy Court's June 7, 2022 Sanction Order.  Both concern the same facts, law, and argument.

### CONCLUSION

For all of the aforementioned argument, law, and facts, Appellants respectfully request that this Court disqualify itself for the same reasons it disqualified itself in the companion case.

Respectfully submitted,

/s Soren Gisleson
SOREN E. GISLESON La Bar No. 26302
HERMAN, HERMAN & KATZ
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Tel: (504) 581-4892
Fax: (504) 561-6024
Email: sgisleson@hhklawfirm.com

-AND-

RICHARD C. TRAHANT (# 22653)
ATTORNEY AT LAW
2908 Hessmer Avenue
Metairie, LA 70002
Telephone: (504) 780-9891
FAX: (504) 780-9891
Email: trahant@trahantlawoffice.com

-AND-

JOHN H. DENENEA, JR. (#18861)
SHEARMAN~DENENEA, L.L.C.
4240 Canal Street
New Orleans, LA 70119
Telephone: (504) 304-4582
FAX: (504) 304-4587
jdenenea@midcitylaw.com

*Attorneys for James Adams, Jackie Berthelot,
Theodore Jackson, and Eric Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on all counsel of record by operation of the Court's electronic filing system on this 30th day of April, 2023.

S/Soren E. Gisleson

10